(No. 34774.—

THE PEOPLE *ex rel.* Frank Keenan, Petitioner, *vs.* JOHN F. McGUANE *et al.*, Respondents.

*Opinion filed April 21, 1958—Rehearing denied May 23, 1958.*

L. Louis Karton, of Chicago, for petitioner.

Benjamin S. Adamowski, State's Attorney, of Chicago, (Francis X. Riley, and Edwin A. Strugala, of counsel,) for respondents.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

This case poses the questions of whether the petitioner's conviction, in the United States District Court, of conspiracy to evade and the evasion of personal and corporate income taxes for the years 1950, 1951 and 1952, in violation of sections 371 of title 18, and 145(b) of title 26 of the United States Code, and sentence to serve two years in the penitentiary and pay a fine in the sum of $56,000, constitutes conviction of an infamous crime in Illinois, which causes a vacancy in his office as Cook County assessor; and whether a pending appeal from such conviction operates to stay the effect of such vacancy.

The facts are not in dispute: Frank Keenan, the petitioner, was elected to the office of assessor at the general election on November 2, 1954, for a term of four years from the first Monday in December, 1954, and until his successor was duly elected and qualified. He qualified and performed the duties of assessor until February 4, 1958, when he was ousted under threat of force by the sheriff of Cook County on direction of its State's Attorney. On January 29, 1958, he was convicted of the income tax violations, sentenced, and fined, as above stated. On the same day, the State's Attorney of Cook County advised its board of commissioners, respondents, that petitioner had been convicted of an infamous crime which created a vacancy in the office of assessor and that it was their duty to appoint his successor. On January 30, 1958, petitioner perfected an appeal to the United States Court of Appeals, Seventh Circuit; advised the board that, by virtue of his appeal, there was no final judgment of conviction against him; that convictions under the Federal law are not encompassed within the infamous crimes defined in section 7 of division II of the Criminal Code, (Ill. Rev. Stat. 1957, chap. 38, par. 587,) and therefore could not constitute a basis to disqualify him from continuing as

such assessor. The State's Attorney further counseled the board that the office of assessor was vacant and that their failure to appoint a successor may place them in the position of violating the law. On February 4, 1958, over the protest of the petitioner, the board adopted resolutions declaring the office of assessor vacant and appointing respondent John F. McGuane to fill the vacancy. McGuane qualified for the office and was sworn in by the county clerk, also respondent. The petitioner, under threat of physical force from the sheriff of Cook County, likewise respondent, yielded up the office. Thereupon, pursuant to motion, we granted petitioner leave to file a petition for *mandamus*, wherein he sought such writ to compel the respondents to restore him to the office of Cook County assessor. Respondents filed answer.

The legal problems presented by the pleadings give rise to the above questions which are dispositive of this case. Initially our attention should be directed to the pertinent provisions of the Illinois constitution and statutes.

The Illinois constitution of 1870, article IV, section 4, provides: "No person who has been, or hereafter shall be, convicted of bribery, perjury, or other infamous crime, nor any person who has been or may be a collector or holder of public moneys, who shall not have accounted for and paid over, according to law, all such moneys due from him, shall be eligible to the general assembly, or to any office of profit or trust in this state," and article VII, section 7, provides: "The general assembly shall pass laws excluding from the right of suffrage persons convicted of infamous crimes."

These constitutional provisions have been implemented by statutes, among which are the following:

Section 7 of division II of the Criminal Code, provides:

"Every person convicted of the crime of murder, rape, kidnapping, willful and corrupt perjury or subornation of perjury, arson, burglary, robbery, sale of narcotic drugs,

sodomy, or other crime against nature, incest, forgery, counterfeiting, bigamy, or larceny, if the punishment for said larceny is by imprisonment in the penitentiary, shall be deemed infamous, and shall forever thereafter be rendered incapable of holding any office of honor, trust or profit, of voting at any election, or serving as a juror, unless he or she is again restored to such rights by the terms of a pardon for the offense or otherwise according to the law." Ill. Rev. Stat. 1957, chap. 38, par. 587.

Section 25—2 of the Election Code provides:

"Every elective office shall become vacant on the happening of either of the following events, before the expiration of the term of such office: * * *

"Fifth—His conviction of an infamous crime, * * *

"No elective office, except as herein otherwise provided, shall become vacant until the successor of the incumbent of such office has been appointed or elected, as the case may be, and qualified." Ill. Rev. Stat. 1957, chap. 46, par. 25—2.

Sections 25—3 and 25—11 of the Election Code, and section 6 of the Revenue Act of 1939, (Ill. Rev. Stat. 1957, chap. 120, par. 487,) authorize the county board, charged with the duty of filling a vacancy in the office of assessor, to determine whether or not facts exist occasioning such vacancy, and if so, to fill it by appointment until the next county election when a successor shall be elected for the unexpired term. Section 29—38 of the Election Code provides that every person convicted of any crime under any article or section of the Code, if the crime is punishable by imprisonment in the penitentiary, shall be deemed infamous and shall forever after be rendered incapable of holding any office of honor, trust or profit, or voting at any election, or serving as a juror unless he or she is again restored to rights of citizenship by the Governor or court according to law.

The constitution provides that no person convicted of bribery, perjury, or other infamous crime, shall be eligible to hold public office, and section 7 of division II of the Criminal Code enumerates certain specific crimes as infamous. However, section 25—2 of the Election Code is without such specification and thereunder every elective office becomes vacant upon conviction of the officer of an infamous crime.

Petitioner urges that he was not convicted of an infamous crime which effects a vacancy in office in Illinois, and cites section 4 of article IV of the constitution of 1870, *People* v. *Kirkpatrick,* 413 Ill. 595, *People* v. *Montana,* 380 Ill. 596, *Hildreth* v. *Heath,* 1 Ill. App. 82, and section 74 of the Civil Practice Act, (Ill. Rev. Stat. 1957, chap. 110, par. 74,) in support of his contention. The constitutional provision cited, which was above quoted, does not identify the other infamous crimes included within the term "or other infamous crime." It is self-executing and offers no support for petitioner's contention.

In the case of *People* v. *Kirkpatrick,* 413 Ill. 595, we held that conviction in a Federal court for violation of the Dyer Act cannot be shown in impeachment in a subsequent criminal prosecution in Illinois for burglary and larceny, since a violation of the Dyer Act is not an infamous crime within the terms of section 7 of division II of the Criminal Code, even though all felonies are infamous crimes under the Federal law. The problem in *Kirkpatrick* was one of evidence, controlled by the law of the forum, Illinois; and that decision had no bearing on the question of vacancy in office by operation of law and has application in the case at bar only by analogy. While the question before the court in *Kirkpatrick* is not now before us, we note that in 1869, section 235 of the Criminal Code, (Gross's Stat. p. 218,) declared that each person convicted of any of the crimes therein enumerated shall be deemed infamous and disquali-

fied not only to hold office, vote and serve as a juror, but also to give testimony. (*Faunce* v. *People,* 51 Ill. 311.) Subsequently, this disability was removed by amendments to section 6 of division XIII of the Criminal Code which provided in part that "No person shall be disqualified as a witness in any criminal case or proceeding by reason of * * * his having been convicted of any crime; but such * * * conviction may be shown for the purpose of affecting his credibility." (Ill. Rev. Stat. 1957, chap. 38, par. 734.) And we must observe that earlier decisions of this court approved the admission of the record of out-of-State or Federal convictions for impeachment purposes, (*People* v. *Derrico,* 409 Ill. 453, 465,) and under the Habitual Criminal Act. *People* v. *Derrico,* 409 Ill. 453, 461 and 462; *People* v. *Hamlett,* 408 Ill. 171, 176, and *People* v. *Poppe,* 394 Ill. 216, 220 *et seq.*

The case of *People* v. *Montana,* 380 Ill. 596, is not pertinent, and *Hildreth* v. *Heath,* 1 Ill. App. 82, while in point, is not binding upon this court. Section 74 of the Civil Practice Act, (Ill. Rev. Stat. 1957, chap. 110, par. 74,) deals with appellate practice and states that an appeal constitutes a continuation of the proceeding in the trial court, yet this does not preclude this court from determining that conviction of an infamous crime in a trial court effects a vacancy in office even though an appeal is taken from the judgment of conviction. We recognize that courts of other jurisdictions support the petitioner's position in this respect, (*People* v. *Enlow,* 135 Colo. 249, 310 P.2d 539; *People ex rel. Attorney General* v. *Laska,* 101 Colo. 221, 72 P.2d 693; *People* v. *Gutterson,* 244 N.Y. 243, 155 N.E. 113; *Bird* v. *Gilbert,* 40 Kan. 469,) but believe that the primary factors in our determination are the provisions of the Illinois constitution and related statutes.

While section 4 of article IV of the constitution of 1870 rendered ineligible to public office any person convicted of bribery, perjury or other infamous crime, section 31 of

article III of the constitution of 1848 only provided that "The General Assembly shall have full power to exclude from the privilege of electing or being elected any person convicted of bribery, perjury or other infamous crime." Consideration of the historical background in connection with the expansion of the 1848 provision of section 31 of article III from power in the General Assembly to exclude from the privilege of electing or being elected any person convicted of bribery, perjury or other infamous crime, to the complete ineligibility of such person to hold public office under section 4 of article IV of the constitution of 1870, is both appropriate and enlightening. The debates of the constitutional convention, held in 1869 and 1870, aid in determining the intent of the drafters of that instrument. While in construing the constitution the true inquiry concerns the understanding of the meaning of its provisions by the voters who adopted it, still the practice of consulting the debates of the members of the convention which framed the constitution has long been indulged in by courts in determining the meaning of provisions which are thought to be doubtful. (*Burke* v. *Snively,* 208 Ill. 328; *Wolfson* v. *Avery,* 6 Ill.2d 78.) Chief Justice Marshall in *Cohens* v. *Virginia,* 6 Wheat. 264, 5 L. ed. 257, 294, offered precedent for this technique in constitutional interpretation in these words: "In expounding them [the words of the Federal constitution], we may be permitted to take into view those considerations to which courts have always allowed great weight in the exposition of laws. The framers of the constitution would naturally examine the state of things existing at the time; and their work sufficiently attests that they did so."

The debates reflect that the following resolution was offered and referred to the Committee on the Legislative Department:

"Resolved, That the Constitution be so amended as to render ineligible to any office of honor, trust or profit, under the laws of

this State, every person found guilty of embezzlement of public money or securities, or who shall be a defaulter thereto, or in regard to any money he may hold in his official capacity." (Debates of the Constitutional Convention, State of Illinois, 1870, vol. 1, p. 116.)

At pages 191 *et seq.* of Volume 1 of the Debates the report of the Committee on the Legislative Department is set forth. Section 32 thereof appears on page 292 and reads as follows:

"Sec. 32. The General Assembly shall exclude from the privilege of being elected to either house, any person convicted of bribery, perjury or other infamous crime."

This report, in amended form, is shown at pages 393 and 394 of said Debates wherein section 32 remains unchanged. The proceedings before the convention, as a committee of the whole, pertaining to section 32 of this report, at page 572, reflect that Mr. Hanna, a member of the convention, in considering the purpose of this section, stated:

"I would call upon the chairman of the committee that presented this report and that article, to tell us what he means by it. Why not let this Convention say that persons convicted of bribery, perjury, or any other infamous crime, shall not be eligible to a seat—or else strike out the whole thing? It means nothing as it now stands. As it reads now, we simply provide that the General Assembly shall pass a law prohibiting persons from occupying seats in the General Assembly who have been convicted of crime. Let this Convention do this, and then we shall know it has been done."

Mr. Allen, of Crawford County, another delegate, remarked:

"I would suggest to the gentleman that the question of whether a man is guilty of bribery, perjury, or other infamous crime, is one that has to be determined by the courts, and it will be the duty of the General Assembly to fix some rule by which they may determine whether that conviction has been had.

"Mr. Hanna. I do not see that that explanation makes it any plainer.

"The section, as it now stands, would require the Legislature to pass a law to declare that no man convicted of an infamous crime, shall be eligible to a seat in the Legislature. I say, if we are going to deal with this question, as I think we certainly ought, let us declare that no man convicted of an infamous offense, shall

be eligible, and then, if the courts convict him, that settles the whole matter without the interposition of the Legislature.

"I will send up my amendment in a few moments. The difference between my honorable friend from Crawford (Mr. Allen) and myself, is, that he wants the Legislature to pass a law to exclude criminals, and I want this Convention to do so without calling upon the legislature."

After this discussion, the following amendment was offered:

"No person convicted of bribery, perjury or other infamous offense, shall be eligible to either house of the General Assembly."

At page 573 the following discussion, between various delegates pertaining to this subject is shown:

"Mr. Pillsbury. I think sir, the provision is a sweeping one. I would add to the substitute these words: 'Unless after such conviction his innocence shall be established.'

"Mr. Chairman: It frequently happens in our country that a man is convicted of crime and sent to the penitentiary, when subsequently his innocence is proved by evidence that cannot be controverted; yet it is here proposed to make a conviction the reason for excluding a man from any office in the gift of the people, when he may be as innocent of crime as any gentleman in this hall.

"If conviction is the rule, then it makes no difference whether it is rightful or wrongful. He nevertheless, is rendered ineligible to any office. I am not willing, sir, that such should be the rule; for in many instances it would work absolute injustice.

"If it were left to the Legislature to say when and in what cases conviction should work ineligibility to office, it could provide for such a contingency. But here we establish an iron rule, which cannot be varied, and will bear as hardly upon the convicted innocent as the guilty.

"Mr. Cary. Mr. Chairman: The argument of the gentleman from Livingston (Mr. Pillsbury) has convinced me that the article as reported by the committee, is correct."

At page 574, the following discussion appears:

"Mr. Anthony. * * * The object is, as I understand, to keep scoundrels out of the Legislature. How do we keep a scoundrel out of the Legislature? We say that no scoundrel shall be eligible to the General Assembly. If a person has been convicted of bribery, perjury, or any infamous crime, I do not want to have it left to the General Assembly to be passed upon by them. The evidence that a man is infamous, is conviction. That is all there is about it. When a man has been tried and convicted of a crime,

the evidence is by the record, and we have it whenever a man has been convicted."

The following proceedings appear at page 576:

"The Chairman. The question is upon the amendment of the gentleman from Livingston (Mr. Pillsbury).

"The clerk read the amendment offered by Mr. Pillsbury, as follows:

" 'Unless, after such conviction, his innocence shall be established.'

"The amendment was not agreed to."

At page 959 the adoption of the 31st section of the report of the Committee on the Legislative Department is set forth:

"The secretary read section thirty-one as follows:

" 'Sec. 31. No person who has been, or hereafter shall be, convicted of bribery, perjury or other infamous crime, shall be eligible to a seat in the General Assembly.' * * *

"The President. The question is on the adoption of the thirty-first section, and it is declared adopted."

These sections, as adopted, were subsequently regrouped by the drafters of the constitution and other pertinent provisions, as similarly discussed and adopted, were combined to make up the final draft of the constitution which was likewise approved, and section 4 of article IV, as ultimately approved by the convention, voted on and adopted by the people, is heretofore set forth.

Adverting to the provisions of section 31 of article III of the constitution of 1848 which empowered the legislature to exclude from membership any person convicted of bribery, perjury, or other infamous crime, and the debates above set forth concerning section 4 of article IV of the constitution of 1870, it is evident that the drafters of the constitution intended that conviction of bribery, perjury, or other infamous crime should, *ipso facto,* render a person ineligible to hold any public office; and that the framers were referring to conviction in the trial court and not to an ultimate conviction following appeal to a higher court or courts.

This conclusion is further fortified by the provisions of section 7 of article VII of the constitution of 1870 which provides: "The general assembly shall pass laws excluding from the right of suffrage persons convicted of infamous crimes." Insofar as the right of suffrage is concerned, the framers of the constitution directed the legislature to pass laws excluding from such right the persons convicted of infamous crimes. This express mandate vested in the legislature the exclusive function of disqualifying from the right of suffrage persons convicted of infamous crimes and of declaring the specific crimes which shall be infamous for this purpose. Pursuant to this constitutional direction, the legislature enacted section 7 of division II of the Criminal Code. However, in this paragraph it exceeded the constitutional mandate and defined infamous crimes with reference to disqualification not only from the right of suffrage, but also from serving as a juror, and holding any office of honor, trust or profit as well. While the legislature has implied authority to define infamous crimes for all purposes, (*Donahue* v. *County of Will,* 100 Ill. 94, 105, 106; *People ex rel. Iddings* v. *Dreher,* 302 Ill. 50, 56,) it certainly is not within its exclusive function to determine what is an infamous crime for the purpose of effecting a vacancy in office.

It is interesting to note that bribery is not enumerated as an infamous crime in section 7 of division II of the Criminal Code, even though section 4 of article IV of the constitution provides that no person who has been, or hereafter shall be convicted of bribery, perjury or other infamous crime shall be eligible to hold any office of honor, trust or profit in this State. If we give credence to petitioner's contention that the enumeration of infamous crimes within section 7 of the above statute excludes any crimes not therein listed, we then face the anomolous situation of the provisions of the statute taking precedence over those of the constitution. Since *Marbury* v. *Madison,* (1803) 1

Cranch 137, 2 L. ed. 60, courts have recognized that where the constitution and à statute are in conflict, the constitution prevails. The principle of *ejusdem generis* is not a rule of thumb, but rather is a rule of construction to aid in ascertaining legislative intent which will not be applied to defeat the evident purpose of a statute. (*Lamere* v. *City of Chicago,* 391 Ill. 552; *Gillock* v. *People,* 171 Ill. 307.) The primary object of construction of the constitution or of a statute is to ascertain and give effect to the intent of the framers. *Wolfson* v. *Avery,* 6 Ill.2d. 78; *People ex rel. McDavid* v. *Barrett,* 370 Ill. 478; *Petterson* v. *City of Naperville,* 9 Ill.2d 233; *Belfield* v. *Coop,* 8 Ill.2d. 293.

While we held in *Christie* v. *People,* 206 Ill. 337, and in *People* v. *Russell,* 245 Ill. 268, cases not involving a vacancy in office by operation of law, that whether a crime is infamous in this State depends not upon the common law but upon the statute, we find that not only the constitutionally infamous crime of bribery, but other heinous felonies such as abortion, abduction, sexual crimes against children, inducing females to enter houses of prostitution, poisoning, and receiving stolen property, are not declared infamous by section 7 of division II of the Criminal Code. (See *People* v. *Russell,* 245 Ill. 268, 278.) The statutory enumeration likewise fails to include treason, misprision of treason, espionage and other equally serious crimes, the infamy of which needs no citation of authority. Bribery involves moral turpitude and was an infamous crime at common law when the constitution was adopted in 1870. (*Christie* v. *People,* 206 Ill. 337.) And it is probable that the other heinous crimes above listed were likewise then so regarded. "An infamous crime at common law was an act, the commission of which was inconsistent with the commonly accepted principles of honesty and decency, or one which involves moral turpitude." (14 I.L.P., Crim. Law, chap. 2, sec. 22, p. 484.) Under these circumstances, we conclude that the determination of what constitutes an

infamous crime, insofar as it effects a vacancy in office, is not an exclusive legislative function, but is subject to judicial decision in the light of the common law as it existed when the constitution was adopted in 1870. We therefore conclude that the cases of *Christie* v. *People* and *People* v. *Russell*, and other similar decisions, are not controlling of the case at bar.

In the case of *Briggs* v. *Board of County Commissioners*, 202 Okla. 684, 217 P.2d 827, the Supreme Court of Oklahoma held that the indictment and conviction of the sheriff of Muskogee County, in the Federal court, of the offense of conspiring to operate and the operation of a wholesale liquor business in Oklahoma, without paying Federal taxes thereon, was conviction of an infamous crime under the laws of Oklahoma, effecting a vacancy in that office by operation of the vacancy statute. Similar conclusions have been reached in a majority of the jurisdictions throughout the United States, a few of which are hereafter cited: *State* v. *Redman*, 183 Ind. 332, 109 N.E. 184; *Hogan* v. *Hartwell*, 242 Ala. 646, 7 So.2d 889; *State ex rel. Anderson* v. *Fousek*, 91 Mont. 448, 8 P.2d 791; *State ex rel. McElliott* v. *Fousek*, 91 Mont. 457, 8 P.2d 795; *Davis* v. *Impelliteri*, 94 N.Y.S.2d 159; *State ex rel. Olson* v. *Langer*, 65 N.D. 68, 256 N.W. 377; *State ex rel. Salisbury* v. *Vogel*, 65 N.D. 137, 256 N.W. 404; *State ex rel. Barrett* v. *Sartorious*, 351 Mo. 1237, 175 S.W.2d 787; *Arnett* v. *Stumbo*, 287 Ky. 433, 153 S.W.2d 889; *Jordan* v. *DeGeorge*, 341 U.S. 223, 95 L. ed. 886; Anno: 20 A.L.R.2d 732.

In the case of *In re Needham*, 364 Ill. 65, this court held that the use of the United States mails to defraud in violation of section 338 of title 18 of the United States Code was a crime involving moral turpitude and that respondent's conviction thereunder warranted his disbarment. The United States Supreme Court in *Jordan* v. *De George*, 341 U.S. 223, 95 L. ed. 886, held that conspiring to defraud the United States of taxes on distilled spirits was a crime involving moral turpitude. In *Christie* v. *People*, 206

Ill. 337, the defendant was indicted under section 83 of the Election Act of 1872, as amended in 1887, for bribery at an election and was convicted. Such offense was not included in the statute which then enumerated infamous crimes. If the crime was infamous, the sentence was valid under section 7 of article VII of the constitution. At page 341, the court stated: "The offense of bribery in elections involves moral turpitude and falls within the class of crimes deemed infamous, and in both the constitution of 1848 and that of 1870 bribery was so classed by the people. In both instruments bribery of all kinds, which included bribery in elections, was classed with perjury as rendering the offender infamous, one showing him to be insensible to the obligations of an oath, and the other proving him alike insensible to the obligations and duties of a citizen and unfit to exercise the elective franchise. We do not see how it can be said that the framers of the constitution, or the people, did not intend that bribery in elections should be included as an infamous crime, within the meaning of section 7."

Accordingly, we conclude that any public officer convicted, in the Federal court or in the court of any sister State, of a felony which falls within the general classification of being inconsistent with commonly accepted principles of honesty and decency, or which involves moral turpitude, stands convicted of an infamous crime under the common law as interpreted when our constitution was adopted in 1870, and that such conviction creates a vacancy in such office. This determination is not inconsistent with the legislative policy expressed in section 29—26 of the Election Code which provides that "If any person who shall have been convicted of bribery, felony or other infamous crime under the laws of *any state* * * * shall thereafter vote or offer to vote at any election or primary he shall upon the conviction thereof be adjudged guilty of a felony, and, for each and every such offense shall be punished by imprisonment in the penitentiary for not less than two nor

more than five years." (Italics ours.) We are also of the opinion that section 7 of division II of the Criminal Code is not the sole repository of infamy legislation in Illinois. *Christie* v. *People,* 206 Ill. 337; Ill. Rev. Stat. 1957, chap. 46, pars. 3—5, 25—2, 29—26, and 29—38; Official Comments of Drafting Commission, article 29, Election Code, (chap. 46,) Ill. Ann. Stat. pages 644 *et seq.*

Petitioner also urges that the common law of England prior to 1606 is the rule of decision; (Ill. Rev. Stat. 1957, chap. 28, par. 1,) that the crime of income tax evasion was unknown to the common law of England, and hence, it is inapplicable; and that if applicable, the legislature discarded such concept by the enactment of section 7 of division II of the Criminal Code. Such contention entirely disregards the provisions of section 25—2 of the Election Code and misconceives the effect of the act adopting the common law, above cited. This court adequately considered the scope and effect of the rule of decision in *Amann* v. *Faidy,* 415 Ill. 422, and at pages 433 and 434 stated: "What the statute adopted was not just those precedents which happened to have already been announced by English courts at the close of the sixteenth century, but rather a system of law whose outstanding characteristic is its adaptability and capacity for growth. The common law which the statute adopted 'is a system of elementary rules and of general judicial declarations of principles, which are continually expanding with the progress of society, adapting themselves to the gradual changes of trade, commerce, arts, inventions and the exigencies and usages of the country.' *Kreitz* v. *Behrensmeyer,* 149 Ill. 496." While we recognize that at common law there was no such offense as income tax evasion, yet we are not concerned with the nomenclature of the offense, but rather with its characteristics. The glory of the common law is, and has been, its capacity for growth and development to meet the needs of society. For the purpose of effecting a vacancy in office,

we hold a felony to be infamous within the concept of the common law, if it is inconsistent with commonly accepted principles of honesty and decency, or involves moral turpitude. We find that the crime of which the petitioner stands convicted was federally denominated as felonious and infamous and that it falls within this classification.

Under the constitutions and statutes of sister States creating a vacancy in public office where the incumbent has been convicted of a felony, it is generally held that the office is vacated upon a verdict of guilty and that an appeal does not stay the effect of such vacancy. These decisions are generally predicated upon the theory that after a plea or verdict of guilty, judgment, and sentence by a court of competent jurisdiction, the presumption of innocence which, up to that time, had persisted in favor of the defendant, no longer prevails, and that the law thereafter presumes that the proceedings have been regular and that the defendant is guilty. *Briggs* v. *Board of County Commissioners,* 202 Okla. 684, 217 P.2d 827; *State ex rel. Hunter* v. *Jurgensen,* 135 Neb. 136, 280 N.W. 886; *Attorney General ex rel. O'Hara* v. *Montgomery,* 275 Mich. 504, 267. N.W. 550; *State ex rel. Olson* v. *Langer,* 65 N.D. 68, 256 N.W. 377; *Bell* v. *Treas. of Cambridge,* 310 Mass. 484, 38 N.E.2d 660; *McKannay* v. *Horton,* 151 Cal. 711, 91 Pac. 598; *In re Obergfell,* 239 N.Y. 48, 145 N.E. 323; *State* v. *Chapman,* 187 Wash. 327, 60 P.2d 245; *State* v. *Levi,* 109 W.Va. 277, 153 S.E. 587; *Becker* v. *Green County,* 176 Wis. 120, 184 N.W. 715, 186 N.W. 584; 43 Am. Jur. sec. 200, p. 44.

Respect for the law and confidence in public officers cannot be compelled. These attributes stand as a voluntary tribute to just laws and integrity in public office. While they exist, both the law and the official will retain public trust. Confidence in an elective official is destroyed when he is convicted of an infamous crime. In the instant case, if the petitioner had been unable to give bond and the peni-

tentiary sentence had been executed, there could be no doubt concerning the vacancy in his office. His ability to give bond cannot alter the public reaction to his conviction. While neither the constitution nor the statutes effecting its purpose define the term "conviction," yet respect for the law and deference to the transcendent trust placed in public officials requires that such officer forfeit his office after the presumption of his innocence is disspelled by conviction of an infamous crime in a trial court. We conclude that the provisions of the Illinois constitution and statutes effecting a vacancy in public office upon the conviction of the incumbent of an infamous crime refer to the conviction in a trial court. The Debates of the Constitutional Convention, heretofore quoted, and particularly the discussion appearing at pages 573 and 574 thereof, also sustain our view.

We find no merit in petitioner's contention that pendency of his appeal stays the finality of his conviction and thereby holds in abeyance a vacancy in the office of Cook County assessor.

Under the conclusions of this court, the petitioner has failed to establish any right to the writ of *mandamus* herein prayed. The writ is therefore denied.

*Writes denied.*