(No. 45784.

ELK GROVE ENGINEERING CO. *et al.,* Appellees, v. BERNARD KORZEN, County Treasurer, *et al.,* Appellants.

*Opinion filed October 1, 1973.—Rehearing denied Nov. 28, 1973.*

RYAN, J., dissenting.

WILLIAM J. SCOTT, Attorney General, of Springfield (JAYNE A. CARR, Assistant Attorney General, of counsel), for appellant Director, Department of Local Government Affairs.

BERNARD CAREY, State's Attorney, of Chicago (SHELDON GARDNER, Chief of Civil Division, and MICHAEL NORRIS, HARVEY P. MUSLIN and PAUL P. BIEBEL, JR., Assistant State's Attorneys, of counsel), for appellants Cook County *et al.*

EDWARD A. BERMAN, of Chicago (SCHLIFKIN & BERMAN, of counsel), for appellees Elk Grove Engineering Co. and Nick DeLuca d/b/a Alex Theatre.

EUGENE T. SHERMAN, of Chicago, for appellees James Celli *et al.*

WILLIAM P. SUTTER, of Chicago, and GORDON C. ADLER, of Bloomington (HOPKINS, SUTTER, OWEN, MULROY & DAVIS, and MERKER & ADLER, of counsel), for *amicus curiae* Illinois Agricultural Association.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

The Director of the Department of Local Government Affairs of the State of Illinois and various officials of Cook County appeal directly to this court under Rule 302(a) (50 Ill.2d R. 302) from three judgments of the circuit court of Cook County holding unconstitutional three sections of the Revenue Act of 1939.

In the first case, plaintiffs, Elk Grove Engineering Co., a corporation, and Nick DeLuca, doing business as Alex Theatre, a sole proprietorship, "individually and for the class of non-farm users and owners of tangible personal property," naming as defendants the treasurer, clerk and assessor of Cook County, and the director of the Department of Local Government Affairs of the State of Illinois, filed an action seeking a declaratory judgment that subparagraph (a) of the personal-property paragraph of section 18 of the Revenue Act of 1939 (Ill. Rev. Stat., 1972 Supp., ch. 120, par. 499) was unconstitutional as violative of section 2 of article I, and section 13 of article IV of the Illinois constitution, and the fourteenth amendment to the Constitution of the United States.

In the second case, plaintiff, James Celli, "individually and in a representative capacity on behalf of all' other Illinois taxpayers similarly situated," naming as defendants the same parties as are so designated in the first case and the members of the Board of Tax Appeals of Cook County, filed an action seeking a declaratory judgment that sections 51.5 through 51.6 of the Revenue Act of 1939 (Ill. Rev. Stat., 1972 Supp., ch. 120, pars. 532.1-532.6) were unconstitutional as violative of section 5(c) of article IX of the Illinois constitution, and the fourteenth amendment to the Federal constitution.

In the third case, plaintiff, Elk Grove Engineering Company, "individually and for the class of corporate and non-residential users and owners of tangible personal property," in an action directed against the same defendants as are named in the first case, sought a declaratory

judgment that subparagraph (b) of the personal-property paragraph of section 18 of the Revenue Act of 1939 (Ill. Rev. Stat., 1972 Supp., ch. 120, par. 499) was unconstitutional as violative of section 2 of article I, and section 5(c) of article IX of the Illinois constitution and the fourteenth amendment to the Federal constitution, or alternatively that section 19.21a of the Revenue Act of 1939 (Ill. Rev. Stat. 1969, ch. 120, par. 500.21a) was unconstitutional "in its offensiveness to both the 1870 and 1970 Constitutions of the State of Illinois and that of the United States."

In each case the defendants moved to strike and dismiss the complaints, and, following consideration of briefs and argument, the circuit court held that the plaintiffs had standing to bring the actions in their own behalf and as proper representatives of a class, that each action was properly maintained as a class action and the members of the class were adequately and competently represented, and that the statutes attacked were unconstitutional. Pursuant to stipulation between the parties, the circuit court ordered the cases consolidated for purposes of appeal. All of the defendants appeal from the judgments in the first and second cases, but in the third case only the county officials have appealed.

Section 18 of the Revenue Act of 1939 provides in pertinent part:

"The classes of property named in this section shall be assessed and taxed except so much thereof as may be, in this Act, exempted:

First: All real property in this state.

Second: All personal property in this State except the following classes thereof:

(a) All tangible personal property which is used by the owner thereof exclusively in cultivating, operating or managing a farm or in the business of farming in this State. ***

(b) Household furniture used for the personal living purposes of the owner at his residence and one automobile used for personal pleasure purposes, per household." Ill. Rev. Stat., 1972 Supp., ch. 120, par. 499.

Section 51.1 provides in pertinent part:

"Every taxpayer, individual or corporate, shall be allowed a standard deduction not to exceed $5,000 from the assessed valuation of his, her or its personal property, as equalized or assessed by the Department of Local Government Affairs. ***" Ill. Rev. Stat., 1972 Supp., ch. 120, par. 532.1.

Section 5 of article IX of the constitution of 1970 provides:

"(a) The General Assembly by law may classify personal property for purposes of taxation by valuation, abolish such taxes on any or all classes and authorize the levy of taxes in lieu of the taxation of personal property by valuation.

(b) Any ad valorem personal property tax abolished on or before the effective date of this Constitution shall not be reinstated.

(c) On or before January 1, 1979, the General Assembly by law shall abolish all ad valorem personal property taxes and concurrently therewith and thereafter shall replace all revenue lost by units of local government and school districts as a result of the abolition of ad valorem personal property taxes subsequent to January 2, 1971. Such revenue shall be replaced by imposing statewide taxes, other than ad valorem taxes on real estate, solely on those classes relieved of the burden of paying ad valorem personal property taxes because of the abolition of such taxes subsequent to January 2, 1971. If any taxes imposed for such replacement purposes are taxes on or measured by income, such replacement taxes shall not be considered for purposes of the limitations of one tax and the ratio of 8 to 5 set forth in Section 3(a) of this Article."

With respect to the exemption of tangible personal property used by the owner exclusively for farming, it is the contention of the appellants that the classification based upon the nature of the property and the use to which it is put is reasonable and valid, and that because the classification is not made upon the basis of ownership, the General Assembly was not required to enact a replacement tax in compliance with section 5(c) of article IX. *Amicus curiae,* Illinois Agricultural Association, urging reversal,

argues that the separate classification of farmers for purposes of personal property taxation would be constitutional; that the statute under attack provides for a separate classification of farm property, and not of farmers, and is "clearly constitutional"; that section 5(c) of article IX is inapplicable here because section 5(a) refers to classes of property and the replacement in 5(c) refers only to classes of property owners. With respect to the household-furniture exemption created by section 18 it is the Director's position that it constitutes a classification of property pursuant to the provisions of section 5(a) of article IX and therefore is not subject to the provisions of 5(c). The county officials contend that the exemption from *ad valorem* personal property tax of household furniture and one automobile has been approved as valid by reason of the decision of the Supreme Court in *Lehnhausen v. Lake Shore Auto Parts Co., 411 U.S. 910, 35 L. Ed. 2d 351, 93 S. Ct. 1001,* and the supplemental opinion of this court following remand (54 Ill.2d 237). With respect to the standard deduction provided in section 51.1 the appellants contend that the statute provides, not an exemption, but a method for determining the valuation of property subject to taxation, and that section 5(c) of article IX is not here applicable.

In support of their contention that the circuit court correctly held the statutes invalid, plaintiffs rely solely on the failure of the General Assembly to comply with the provisions of section 5(c) of article IX.

Upon examination of the provisions of section 5 of article IX of the constitution of 1970, we find apposite the following statement from *People ex rel. Keenan v. McGuane, 13 Ill.2d 520,* "While in construing the constitution the true inquiry concerns the understanding of the meaning of its provisions by the voters who adopted it, still the practice of consulting the debates of the members of the convention which framed the constitution has long been indulged in by courts in determining the meaning of

provisions which are thought to be doubtful. (*Burke v. Snively, 208 Ill. 328; Wolfson v. Avery, 6 Ill.2d 78.*) Chief Justice Marshall in *Cohens v. Virginia, [19 U.S.] 6 Wheat. 264, 5 L. Ed. 257, 294,* offered precedent for this technique in constitutional interpretation in these words: 'In expounding them [the words of the Federal constitution], we may be permitted to take into view those considerations to which courts have always allowed great weight in the exposition of laws. The framers of the constitution would naturally examine the state of things existing at the time; and their work sufficiently attests that they did so.' " (13 Ill.2d 520, at 527.) The problems created by the requirement of the constitution of 1870 that a tax measured by valuation must be uniform as to all property, both real and personal (Ill. Const. (1870), art. IX, sec. 1; *People ex rel. Palmer v. National Life Ins. Co., 367 Ill. 35, 42; People v. Worthington, 21 Ill. 171*) were recognized by the delegates to the Sixth Illinois Constitutional Convention, and in its report, the Committee on Revenue and Finance stated that the uniform universal taxation of personal property is not administratively feasible and "has unfortunate economic effects." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2133 [hereinafter cited as Proceedings].) The report reflects that despite the criticism of such taxation the committee recognized that it was a major source of revenue for units of local government. The question was a major source of disagreement, not only within the committee, but in the convention, and section 5, prior to approval, underwent many amendments and draft revisions.

In the form originally proposed, section 5 contained only what is now, except for minor language differences, section 5(a). The committee's proposal acknowledged that Senate Joint Resolution No. 30 would be submitted to a referendum vote at the general election in November 1970, and the drafting of section 5, and the debates, indicate

that the members of the committee, and the majority of the delegates to the convention, anticipated that article IX—A would be approved by the voters in the November 1970 election.

In its report the committee said:

"If the voters approve SJR 30 on November 3, there will be yet another reason for the adoption of proposed Section 4.2. The language proposed by SJR 30 in 1969 and 'clarified' by SJR 67 in 1970 will create new property tax problems. Apparently, it will exempt not only the personal property of individuals which is used for non-business purposes, but also the personal property used by farms and businesses organized as single proprietorships. Similar property used by competitors organized as partnerships or corporations will remain taxable. This will create competitive problems and provide opportunities for avoiding property taxation by transfer of ownership to individuals. Some members of the Committee also believe that this provision is likely to be held in violation of the federal constitution.

Approval of a new constitution after November 3 containing proposed Section 4.2 will nullify the results of the referendum of that date and will permit the legislature to enact legislation carefully drafted to provide property tax relief. Such legislation could provide for broader exemptions than those proposed in SJR 30 or for narrower ones. Undoubtedly, in drafting such legislation, the General Assembly would be conscious of whatever public attitude toward personal property taxation is revealed by the results of the November 3 election, but it would not be bound to every detail of the proposal." 7 Proceedings 2136-7.

Nine of the 18 members of the Revenue Committee dissented from the proposal. (7 Proceedings 2138-2142.) Six of the dissenting members proposed the following addition to section 5:

" 'Any ad valorem personal property tax abolished or not imposed on the date this article takes effect shall not be reinstated or imposed thereafter. On January 1, 1979, the General Assembly shall abolish all ad valorem personal property taxes not previously abolished, and shall replace

revenues lost to local governmental units as a result of such abolition by levying or authorizing the levy of taxes other than on an ad valorem basis'." 7 Proceedings 2139.

They explained that the purpose of the first sentence was to validate any existing legislation abolishing the *ad valorem* personal property tax (see Ill. Rev. Stat. 1969, ch. 120, par. 500.21a) and the referendum to be held on then-proposed article IX-A. They also explained that the purpose of the second sentence was to direct abolition of all *ad valorem* personal property taxation, but that in order to avoid needless disruption to local governmental finances it provided for a nine-year phase-out period and replacement of lost revenue. The original proposal was introduced in the convention (3 Proceedings 1812) and the minority proposal was offered as an amendment (3 Proceedings 2038). On motion, the two sentences of the amendment were divided into two questions. There was little debate on the majority proposal or the first sentence of the amendment, but strong disagreement arose concerning the second. The debates were extensive and the proposed amendments many and varied. See 3 Proceedings 2037-2061, 2065, 2066, 2067, 2138, 2139, 2149-2154; 7 Proceedings 2252-2253; 5 Proceedings 3758, 3762-3764, 3822, 3823, 3825, 3829, 3831, 3833-3839.

On August 9, 1970, the following amendment was proposed:

" '(b) Any ad valorem personal property tax abolished on or before on the date this Constitution takes effect shall not be reinstated thereafter.

(c) On or before January 1, 1979, the General Assembly shall abolish all ad valorem personal property taxes and concurrently therewith and thereafter shall replace all revenue lost by units of local government and school districts as a result of the abolition of ad valorem personal property taxes subsequent to January 2, 1971, by imposing statewide taxes on the class or classes of persons relieved of the burden of such ad valorem taxes. If any statewide taxes imposed solely for such replacement purposes are taxes on or measured by income, such

replacement taxes shall not be considered for purposes of the limitation of one tax and the ratio of 8 to 5 described in Section 3(a). Such replacement of lost revenues shall not be provided by the levy of ad valorem taxes on real estate.' " 1 Proceedings 577.

The proceedings of that day reflect extensive debate concerning the proposed provision and leave no doubt that by the term "classes" the delegates meant classes of taxpayers and that it was the intent of the convention that any *ad valorem* personal property tax abolished must be replaced concurrently therewith and thereafter. (See 5 Proceedings 3889-90.) No further question was raised on either of these matters, and in the final report of the Committee on Style, Drafting and Submission, section 5 was submitted for consideration of the convention, on third reading, in the form in which it appears in the constitution. Demonstrating that in the minds of the delegates the matters appear to have been clearly settled is the fact that in the explanations contained in its final report to the convention the Committee on Style, Drafting and Submission raised only the following questions:

"(36) The Committee on Style, Drafting and Submission raises the question whether it is clear that the Convention's intent was to mandate the General Assembly to abolish ad valorem personal property taxes by January 1, 1979, as opposed to abolishing them by such date by Constitutional provision. (Article IX, Section 5.)

\* \* \*

(38) The Committee on Style, Drafting and Submission raises the question of whether if the General Assembly abolishes ad valorem personal property taxes subsequent to January 1, 1979 the requirement that they concurrently replace the revenue lost by units of local government and school districts still applies. (Article IX, Section 5.)" 7 Proceedings 2605.

On August 27, 1970, Delegate Whalen, in explanation of the Style, Drafting and Submission report said:

"We did have one question, however, and that was if the personal property tax is not abolished by January 1, 1979, does the replacement requirement attach? In other

words, if the personal property tax is abolished on January 2 or January 3, 1979, is there any requirement to replace the lost revenue? We raise that only as a question for the Convention, and we don't think we have the answer to it.

The second question we raise — and it is really related to the first one — is whether the first sentence automatically abolishes the personal property tax subsequent to January 1, 1979, or whether legislative action is required to abolish it." 5 Proceedings 4255.

The transcripts do not reflect further discussion and section 5 was approved on third reading without further mention or change. 5 Proceedings 4494.

The convention adopted the 1970 constitution on September 3, 1970; on November 3, 1970, the voters, as the convention had anticipated, approved article IX-A to the 1870 constitution; and on December 15, 1970, the People ratified the 1970 constitution. On July 9, 1971, this court in *Lake Shore Auto Parts Co. v. Korzen, 49 Ill.2d 137,* held that an exemption from *ad valorem* personal property taxation on the basis of ownership of the property created a classification in violation of the equal-protection clause of the fourteenth amendment to the Federal constitution and declared article IX-A unconstitutional. Thereafter the General Assembly enacted Public Act 77—2093, amending section 18 of the Revenue Act of 1939 (Ill. Rev. Stat., 1972 Supp., ch. 120, par. 499), and Public Act 77—2094, adding section 51.1 to that act; both were approved on July 20, 1972, and neither makes provision for any distinction between individual and other owners of tangible personal property. The United States Supreme Court on February 22, 1973, held that article IX-A of the 1870 constitution does not violate the equal-protection clause of the fourteenth amendment (*Lehnhausen v. Lake Shore Auto Parts Co., 411 U.S. 910, 35 L. Ed. 2d 351, 93 S. Ct. 1001*), and in our supplemental opinion following remand (54 Ill.2d 237) we held that it exempts from *ad valorem* taxation all personal

property, including bank stock, owned by a natural person or by two or more natural persons as joint tenants or tenants in common. Remaining taxable under this article is personal property owned by corporations, partnerships, limited partnerships, joint ventures, professional associations, professional service corporations or others that are not natural persons, and personal property held by trustees and other fiduciaries. See *Lake Shore Auto Parts Co. v. Korzen, 54 Ill.2d 237.*

Upon consideration of the proceedings at the convention and the available commentaries (see Helman and Whalen, Constitutional Commentary, S.H.A. Const. of 1970, art. IX, sec. 5(c), at 201-202; 7 Proceedings 2065; Kamin, Constitutional Abolition of Ad Valorem Personal Property Taxes (1972), 60 Ill. Bar J. 432), we conclude that the provisions of section 5(c) constitute a mandate to the General Assembly to abolish all *ad valorem* taxes on personal property on or before January 1, 1979; that the provision is not self-executing and legislation is both contemplated and necessary to carry it into effect (*Fiedler v. Eckfeldt, 335 Ill. 11, 23-24*); and that the provision does not require that all such taxes be abolished at one and the same time but the General Assembly is under a continuing duty to effect their abolition on or before January 1, 1979. (See *Fergus v. Kinney, 333 Ill. 437;* 5 Proceedings 3761.) Further, section 5(c) requires the General Assembly, when abolishing the *ad valorem* personal property taxes, to concurrently therewith and thereafter replace all revenue lost by units of local government and school districts by imposing statewide taxes solely on those classes relieved of the burden of the taxes abolished. Like the provision requiring the General Assembly to abolish all personal property taxes, this provision is not self-executing, it is continuing (see 5 Proceedings 3888) and legislation is both contemplated and necessary to carry it into effect. Whether section 5(c) provides a single mandate to "abolish" and "replace," mutually dependent mandates,

or, as suggested (see Kamin, *supra*), a mandate and a limitation, we hold that the General Assembly cannot abolish *ad valorem* personal property taxes which relieve a class of taxpayers of the burden of the tax without imposing replacement taxes in accordance with the provisions of section 5(c). We need not determine whether, as contended by the defendant Director and *amicus,* the classifications in question are or are not proper under section 5(a) for the reason that although section 5(a) permits classification of personal property for purposes of *ad valorem* taxation and the abolition of such taxes, we hold that the revenue-replacement provisions of section 5(c) apply to the abolition of personal property taxes whether effected under 5(a) or 5(c).

We consider next the contentions of the defendants that the exemptions provided in the statutes do not constitute an abolition of the tax. Defendants acknowledge that the grant of an exemption from taxation to certain property achieves the same result as eliminating or abolishing the tax with respect to that property. They argue, however, that there is a distinction between the exemption created under section 18, subparagraph (a), which is based upon the nature and use of the property, which they contend falls within the scope of section 5(a), and an exemption based on ownership of the property, which they contend comes within the scope of 5(c). We find nothing in the lengthy debates at the convention or the language of the section to support this distinction, and we are of the opinion that the exemption for which the section provides is an abolition within the meaning of section 5(c).

Defendants also argue that the standard deduction provided in section 51.1 of the Revenue Act did not create an exemption, but provided a method for determining the valuation of the property subject to taxation. In *Hoffman v. Lehnhausen, 48 Ill.2d 323,* we considered the validity of a statute granting a $1,500 homestead exemption and the

argument that it was a "property valuation reduction" and not a true exemption. We held there that a valuation reduction was an exemption to the extent the assessed value was reduced, and we hold here that the standard deduction provided in section 51.1 is an exemption to the extent that it reduces the assessed valuation of the property to be taxed. We hold further that the standard deduction provided in section 51.1 is an abolition within the meaning of section 5(c), and as therein provided a replacement tax must be imposed concurrently with the granting of such deduction.

We need not consider the validity of section 18, subparagraph (b), for the reason that it purports to create an exemption with respect to the personal property of individuals, the taxation of which was expressly prohibited under article IX-A of the constitution of 1870. Since such taxation was abolished prior to the effective date of the constitution of 1970, it cannot, under the provisions of section 5(b), be reinstated, and the case in which it was held to be invalid is therefore moot. Nor need we, as requested by plaintiffs, consider either the validity of section 19.21a of the Revenue Act of 1939 (Ill. Rev. Stat. 1969, ch. 120, par. 500.21a) under the constitution of 1870, or whether the intent of subsection 5(c) was to ratify a possibly unconstitutional statute (*cf. People ex rel. Hanrahan v. Caliendo, 50 Ill.2d 72, 76*) for the reason that the exemption granted by that statute was no broader than the abolition of the personal property tax under article IX-A of the 1870 constitution.

We hold that by reason of the failure of the General Assembly to impose a replacement tax in compliance with the provisions of section 5(c) of article IX of the 1970 constitution, section 18, subparagraph (a), and section 51.1 of the Revenue Act of 1939 are invalid. The judgments of the circuit court of Cook County are, therefore, affirmed.

*Judgments affirmed.*

MR. JUSTICE RYAN, dissenting:

I do not view the provisions of section 5(c) of article IX of the constitution of 1970 as being only an unenforceable mandate to the legislature to abolish *ad valorem* personal property taxes. Section 5(c) is divided into two subjects: (1) The abolition of the *ad valorem* personal property tax, and (2) the replacement of the revenue lost by units of local government and school districts as a result of the abolition of the tax.

The provisions relating to abolition contained in section 5(c) are: "On or before January 1, 1979, the General Assembly by law shall abolish all ad valorem personal property taxes ***." This language invites the inquiry as to whether it constitutes a limitation on the sovereign power of the legislature to tax or whether it is merely an unenforceable mandate. The majority opinion holds it to be the latter. I view it as a mandate to the legislature lasting until January 1, 1979, and thereafter it constitutes a limitation prohibiting the imposition of an *ad valorem* personal property tax after that date.

When this provision was first offered at the constitutional convention it was offered for the purpose of ensuring the abolition of that tax. The date January 1, 1979, and the requirement for legislative action were inserted to provide a gradual phasing out of the tax to avoid the disruption and confusion that would be encountered by local taxing units by a sudden and abrupt curtailment of this source of revenue. During the debate on this proposition before its adoption both its proponents and opponents recognized it as a limitation on the power to tax which would effectively abolish *ad valorem* personal property taxes after January 1, 1979. (Kamin, Constitutional Abolition of Ad Valorem Personal Property Taxes, 60 Illinois Bar Journal 432, 439.) After this section was adopted it was referred to the committee on style and drafting. It was after this committee had submitted its proposed draft that some of the delgates voiced their belief

that the provision was not a limitation having the effect of abolishing the tax after January 1, 1979, but was only a mandate which the legislature could ignore. See Kamin, pages 440 and 442.

If this provision is only to be viewed as a mandate to the legislature, why was the time by which the abolition must be accomplished fixed at January 1, 1979? A mandate to the legislature could simply have stated "the General Assembly by law shall abolish all ad valorem personal property taxes." This language would have had the same effect as the interpretation given to the first part of section 5(c) by the majority of this court. The insertion of the date January 1, 1979, must have had some meaning. It is logical to assume that the language does not mean that after January 1, 1979, the legislature cannot abolish this unpopular tax. The only logical explanation that comes to mind is that by the insertion of this date the constitution directed the General Assembly to phase out this tax by January 1, 1979, and after that date prohibited its imposition.

A further persuasive argument in support of this conclusion is my belief that this was also undoubtedly the understanding of the voters when they ratified the 1970 constitution. Following the adoption of the proposed constitution by the delegates to the constitutional convention 12 million copies of the "Official Text with Explanation" authorized by the convention were printed in newspaper tabloid form and one copy was mailed to each registered voter in the State and it was also carried as a supplement to most of the newspapers published within Illinois. (7 Record of Proceedings, Sixth Constitutional Convention 2667.) Incorporated at the beginning of this document was an "Address to the People" which stated under the heading *"The Revenue Article":*

> "The ad valorem tax on personal property is made dependent, insofar as individuals are concerned, on the amendment which is to be voted on at the November 3, 1970 general election, which would prohibit the personal

property tax 'as to individuals'. *Any remaining personal property tax is to be abolished by 1979 \*\*\*."* (Emphasis added.) 7 Proceedings 2676.

This publication also contained the proposed 1970 constitution, set forth section by section with an explanation following each section. At the beginning of this part of the document was an "Introduction" which stated:

"The proposed 1970 constitution for the State of Illinois appears on this and the following pages. The official text is printed in black. Following each section is appropriate information explaining that section. These explanations are printed in blue." 7 Proceedings 2681.

Following section 5(c) of article IX, explaining the effect of that section, the official explanation states:

"It prohibits taxing any personal property by its value after January 1, 1979." 7 Proceedings 2737.

Regardless of the understanding of some of the delegates to the constitutional convention as to the meaning of section 5(c), the official explanation which was given to the voters of this State was that after January 1, 1979, the *ad valorem* personal property tax was prohibited. The voters were thus voting on this section of the constitution not as a mandate to the legislature that could be ignored but as a limitation upon the legislature's power to impose a tax on personal property. The fact that only cursory consideration was given to the contents of the "Official Text with Explanation" by the delegates to the constitutional convention (see Kamin page 445) does not mean that it should receive no consideration in interpreting this section of the constitution. This was the official explanation of the proposed constitution which the convention authorized to be submitted to the people for their guidance in determining whether to vote for or against the proposed constitution. Without a favorable vote of the people the constitution would not have been adopted. The people were informed that section 5(c) abolished the tax on personal property by value after January 1, 1979, and the people voted to do just that. I

cannot now say that section 5(c) does not constitute a limitation on the power of the General Assembly to tax personal property after January 1, 1979. I have on a previous occasion commented on the need to give consideration to the official explanation which was given to the voters prior to the adoption of the 1970 constitution when interpreting the meaning of its provisions. See *Board of Education v. Bakalis, 54 Ill.2d 448,* at 476 and 477.

Considering now the replacement-of-lost-revenue question presented by section 5(c), I consider this provision to be only a mandate to the legislature which is not enforceable by judicial proceedings. The majority opinion finds this provision to be either a limitation on the General Assembly's power to tax or a dependent provision that must be carried out to validate any attempt to abolish the tax. With this interpretation I cannot agree.

Viewing the abolition part of section 5(c) as a limitation, after January 1, 1979, the General Assembly would have no authority to authorize the imposition of the tax. What then would be the effect of the failure by the legislature at that time to enact a replacement tax? It clearly would not require the re-imposition of a tax which the constitution prohibits. Thus the constitutional requirement that the legislature enact a replacement tax must be considered as a mandate to the General Assembly which imposes upon that body a continuing obligation until performed, but which cannot be enforced by judicial action.

If this would be the effect of a failure to enact a replacement tax after January 1, 1979, I must accept it as the effect of the failure by the legislature to do so at this time. I would therefore hold the statutory provisions in question to be constitutional and I would reverse the circuit court of Cook County.