STATE of Tennessee, Appellee,

v.

**Keith W. RIBA, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

April 16, 1981.

Permission to Appeal Denied by Supreme Court June 29, 1981.

Russell X Thompson, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, Henry P. Williams, Michael W. Hughes, Asst. Dist. Attys. Gen., Memphis, for appellee.

OPINION

DWYER, Judge.

The appellant, a former commissioned police officer for the City of Memphis, appeals his conviction by a jury for committing the offense of neglect of duty, T.C.A. § 39–3201, with punishment of confinement in the workhouse for 11 months and 29 days plus a fine of $1000.

The sole issue before us addresses the sufficiency of the evidence.

The decedent, William Frost, age, late fifties, was found dead on the early morning hours of February 7, 1979, near a main-

tenance building in the Overton Park area of the City of Memphis. The cause of death was systemic hypothermia secondary to acute ethanolism.* A postmortem of his body reflected death having occurred between 1:30 a. m. and 3:00 a. m. on that date. There were three lacerations on the back of the head, one being old, the second with sutures, and the third was a fresh wound having occurred three to five hours prior to his death. The State's proof revealed that a cylindrical object such as the flashlight recovered from appellant's squad car could have caused the fresh star-shaped wound.

The decedent frequented the Overton Square part of the City and was referred to in that area as the "oldest hippie". The record establishes clearly that he was an alcoholic and known also in that area as part of the street people. The evidence further establishes that he had been experiencing difficulties in controlling his bowel movements and as a result had a bad body odor. He was a small man, 5 feet 8 inches in height and at death weighed 107 pounds.

On the snowy evening in question, February 6, 1979, the appellant and his partner, Steve Scruggs, answered a call to an apartment building located at 14 S. Diana concerning a drunk in the hallway and from that point on the evidence by the State and the appellant was in sharp conflict. It will be narrated here under established principles of law that the jury's guilty verdict accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978). On appeal the State is entitled to the strongest legitimate view of the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

When appellant arrived on the scene the complainant heard the decedent state, "Don't hit me." Another resident observed the decedent being dragged to the squad car. The subsequent investigation revealed blood stains on the floor of the building

* In layman's terms the decedent froze to death and the secondary cause would be from alcohol. The decedent's blood alcohol content registered .46% ethyl alcohol at the time of his autopsy.

where Mr. Frost had been. The stains were analyzed and found to be group "O", the decedent's blood type. A heel print of a shoe in the blood matched the heel print of Officer Scruggs. The squad car was examined and blood stains found therein were group "O". Blood stains were also found on Officer Scruggs' flashlight and his uniform trousers.

After responding to the call and removing Frost, the appellant and his partner, still on duty, went to a nightclub in Overton Square to meet Scruggs' girl friend. From that location the appellant untruthfully transmitted that they were transporting a sick party to 1432 Harbert and later transmitted they were on the scene at that location. In reality Frost had already been released at another location. It was also revealed that appellant made these false transmissions in order to avoid getting a late call so close to the end of the shift.

An eyewitness observed the appellant on January 29, 1979, at 14 S. Diana strike Mr. Frost in the head with his flashlight, throw him over the banister, and ram his head against the squad car. The appellant falsified his activity log sheet for that date to reflect no drunk. Mr. Frost was taken by some acquaintances to the hospital that night for treatment of a head wound.

The appellant, testifying in his own behalf, denied striking or mistreating Frost at any time and related that after answering the call they escorted the decedent to another apartment house in the vicinity of the square where he could stay warm. He admitted giving a false statement to the investigating officer in regards to the transporting the decedent to 1432 Harbert. He further related it was a custom among officers in dealing with non-violent drunks to simply remove the inebriated person from the premises of the complainant instead of making an arrest. In other words, the officer had discretion whether to arrest or not and that if taken to jail the party would be released in five hours.

The jury, of course, did not believe his testimony and by their verdict has discredited his theory that he followed the prevailing custom; hence, no neglect of

duty. The evidence is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); T.R.A.P. 13(e).

Appellant Riba was a commissioned police officer employed by the City of Memphis. In preparation for his role as a public officer, *Broyles v. State*, 207 Tenn. 566, 577, 341 S.W.2d 724 (1960), he received special training in upholding the ordinances of the City of Memphis and the laws of the State. Upon his completion of such training he took a solemn oath to uphold the law, which included Section 30–11 of the Memphis Municipal Code mandating that the police arrest persons found violating any provision of this code or any city ordinance or law of the State, within the city limits and that such person shall be immediately committed to the city prison. Section 22–17 makes it unlawful for any person to be drunk in any private place to the annoyance of others. Further, Section 22–17.1 makes it unlawful for any person to be drunk in any public place *so as to be incapable of protecting his own safety or in such a condition as to constitute a danger to himself or to others.* Appellant contends that his uncontradicted proof establishes a general custom among Memphis police officers of not arresting non-violent drunks. This contention conflicts squarely with the testimony of the police legal adviser Lieutenant Clyde W. Keenan who related that Memphis police officers have two alternatives in handling inebriated persons: (1) take them to the city jail, or (2) if injured, to the hospital.

From the jury's verdict they inferred from the evidence that on the night in question the appellant encountered the decedent at 14 S. Diana and struck him about the head with a flashlight. It may also be inferred that this officer took physical control over the deceased, placed him in a police car and instead of transporting him to jail, the appellant discharged Frost in a deserted area in frigid weather so that they could expeditiously return to the nightclub.

In light of the aforementioned ordinances, appellant's handling of the inebriated Frost constituted a willful and conscious act of a neglect of duty.

In conclusion, the appellant was under a positive duty to arrest Frost and in the exercise of that duty if he discovered he was injured to transport him to the hospital. The customs and practices as advanced by the appellant, if true, cannot relieve him of the duties imposed by law. The evidence issue is accordingly found to be without merit.

The judgment of the trial court is affirmed.

WALKER, P.J., and O'BRIEN, J., concurs.