STATE, *ex rel.* J. P. WEBB, *v.* W. M. PARKS.

(*Knoxville.* September Term, 1909.)

1. **PARDON.** Governor's pardon of a justice convicted of official oppression, and fined and removed from office, cannot restore the office lost as on such impeachment.

   Where a justice of the peace indicted for official oppression is convicted of the offense, and is, by the judgment of the court, fined and removed from office, and forever thereafter disqualified from holding officer under the laws and constitution of the State, the governor's pardon of the fine, and also attempting to render said judgment null and void and of no effect, except as to costs, was ineffective to restore the office, because the removal of the justice from office was as upon conviction on impeachment, and the governor's pardoning power does not extend to judgments of conviction in impeachment cases.

   Code cited and construed: Secs. 6717, 6721 (S.); secs. 5607, 5611 (M. & V.); secs. 4813, 4817 (T. & S. and 1858).

   Code cited as inapplicable: Secs. 3655, 6066 (S.); secs. 2800, 5000 (M. & V.); secs. 1994, 4228 (T. & S. and 1858).

   Constitution cited and construed: Art. 3, sec. 6; art. 5, secs. 1-5.

   Cases cited and approved: Carpenter v. State, 6 Bax., 535; State v. Cassetty, 3 Tenn. Cas., 120; and authorities in other jurisdictions cited on page 238 of the opinion.

   Case cited as inapplicable: Moore v. State, 9 Yerg., 353.

2. **REMOVAL FROM OFFICE.** Upon conviction of a justice of the peace for official oppression without a proceeding by bill ʄin the nature of a.quo warranto.

   Where a justice of the peace indicted for official oppression is convicted of the offense, the judgment to the extent of removing him from office and forever thereafter disqualifying him from

State, ex rel., v. Parks.

holding office under the laws and constitution of the State, was as upon conviction on impeachment, and was properly rendered as part of the same proceeding; and it was, therefore, unnecessary, in order to obtain the justice's removal from office, that the State, after his conviction, proceed against him by a bill in the nature of a *quo warranto* under section 5165 to 5187, inclusive, of Shannon's Code. (*Post, pp.* 237, 238.)

Code cited and construed: Secs. 5165-5187, 6717, 6721 (S.); secs. 4146-4168, 5607, 5611 (M. & V.); secs. 3409-3431, 4813, 4817 (T. & S. and 1858).

Constitution cited and construed: Art. 5, secs. 1-5.

## FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.  T. M. McCONNELL, Chancellor.

VANCE & CARDEN, for complainant.

SHEPHERD, FLEMING & SHEPHERD, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The present bill was filed to remove the defendant from the office of justice of the peace, claimed by him, on the ground that he was an intruder without authority of law, and that the complainant was the real incumbent of the office. The bill was met by a demurrer, which was sustained by the chancellor. Thereupon an

appeal was prayed and prosecuted to this court.

The facts stated in the bill are these :

That on the 2d day of August, 1906, the relator was elected a justice of the peace for the Sixth civil district of Hamilton county for the full term of six years, and was duly commissioned by the governor, and entered upon the discharge of his duties; that at the January term, 1909, of the criminal court of Hamilton county he was indicted, jointly with Thomas Light, a deputy sheriff, and W. G. Sears, constable for the Sixth district, on the charge of official oppression, in four cases —each indictment containing the same statement of facts—under section 6717 of Shannon's Code, and that he was convicted in all four of the cases, and in each of them was entered a judgment as follows, viz.:

"Again came the attorney-general, and defendants in person, and the same sworn jury, to wit: . . . And they, having heard all the proof, arguments of counsel, and charge of the court, do upon their oaths say the defendants are guilty of oppression, as charged in the indictment, and fix their punishment at payment of $50 each. It is therefore adjudged that the defendants pay a fine of $50 each, together with all costs, and, in default thereof, be confined in the workhouse of Hamilton county until same is worked out, as prescribed by law. Execution shall issue against defendants for costs. It is the further order, judgment, and decree of this court that the defendant J. P. Webb be removed from his office, to wit, justice of the peace for this county,

and that defendant W. G. Sears be removed from his office, to wit, constable of Hamilton county, and that defendant Thomas Light be removed from the office of deputy sheriff of Hamilton county, and all of said named defendants are forever hereafter disqualified from holding office, under the laws and constitution of the State of Tennessee."

It is further alleged in the bill that the election commissioners of Hamilton county, on the —— day of May, 1909, called an election to choose relator's successor; that on the 5th day of May, 1909, after the election commissioners had called the election as aforesaid, but before it had been held, the governor of the State pardoned the relator, and the said Light and Sears, of said offense of official oppression; that said pardon, after fully stating the governor's reasons for granting it, contained the following language: "Therefore I, Malcolm R. Patterson, governor as aforesaid, by virtue of the power and authority in me vested, do hereby relieve of the fines and pardon the said J. P. Webb, Thomas Light, and W. G. Sears of the said offense; and I do further *authorize and direct that said judgment be rendered* null and void and of no effect, except as to costs." It is further alleged that, immediately upon receipt of this pardon, relator served written notice upon the election commissioners that the pardon had been received, and that his office had not been legally vacated, and therefore no election for said office could be legally held;

that this notice, however, was disregarded by the commissioners, and they proceeded to hold an election as called on the 8th day of May, 1909, which resulted in the election of W. M. Parks, who received a commission from the governor, and at the date of the filing of the bill was, without authority of law, undertaking to perform the duties of the office.

The demurrer which was interposed by the defendant, Parks, raised the point that, under the facts stated, there was a vacancy in the office of justice of the peace for the Sixth district of Hamilton county, created by the judgment, and that the pardon of the governor did not restore relator to his office, and that the pardon could not render "null and void and of no effect" the whole judgment.

We think the decree of the chancellor was correct.

The pardoning power in this State does not extend to the relief of defendants from judgments rendered in impeachment proceedings. This power is expressly excluded in the grant of power upon the subject of pardons, as contained in article 3, sec. 6, of the constitution. That section reads that the governor "shall have power to grant reprieves and pardons, after conviction, except in cases of impeachment." That the judgment which deprived relator of his office was an impeachment proceeding, in so far as it referred to that subject, is apparent from article 5, sec. 5, of the constitution. In order to properly understand this latter section, it should be construed in connection with sections 1, 2,

State, ex rel., v. Parks.

3, and 4. Section 1 lodges the power of impeachment in the house of representatives. Sections 2 and 3 provide the method of trial. Section 4 mentions the officers who may be impeached. That section reads as follows:

"Sec. 4. The governor, judges of the supreme court, judges of the inferior courts, chancellors, attorneys for the State, treasurer, comptroller, and secretary of State shall be liable to impeachment, whenever they may, in the opinion of the house of representatives, commit any crime in their official capacity, which may require disqualification; but judgment shall only extend to removal from office, and disqualification to fill any office thereafter. The party shall, nevertheless, be liable to indictment, trial, judgment, and punishment according to law. The legislature now has, and shall continue to have, power to relieve from the penalties imposed upon any persons disqualified from holding office by the judgment of the court of impeachment.

Section 5 reads:

"Sec. 5. Justices of the peace, and other inferior officers, not hereinbefore mentioned, for crime or misdemeanor in office, shall be liable to indictment in such court as the legislature may direct; and upon conviction shall be removed from office by said court, as if found guilty on impeachment; and shall be subject to such other punishment as may be prescribed by law."

The latter section prescribes the mode of impeachment applicable to justices of the peace and to other officers therein named. Pursuant to this section the

legislature passed sections 6717 and 6721 of the Code, under which the judgment complained of was rendered against the relator. These sections read:

"Sec. 6717. If any person by color of his office, willfully and corruptly oppress any person under pretense of acting in his official capacity, he shall be punished by fine not exceeding $1,000, or imprisonment in the county jail not exceeding one year."

"Sec. 6721. If any judicial, ministerial, or executive officer in this State is prosecuted for misdemeanor in office under the provisions of this Code, and duly convicted, he shall, in addition to the punishment prescribed for such offense, be removed from his office, and shall forever thereafter be disqualified from holding office, under the laws and constitution of the State."

It was proper, therefore, that the judgment should be framed in the manner set out in the bill. It was clearly contemplated in section 5, art. 5, of the constitution, that in the same proceeding in which the guilt of the accused should be ascertained he should be removed from office and disqualified from ever thereafter holding office. While it was contemplated that the officers mentioned in section 4, art. 5, should be impeached when necessary before the legislature, and also indicted and punished in the criminal court, as to justices of the peace and other inferior officers, the two proceedings were united into one by section 5. This is the clear meaning of the provisions of the constitution. The question has not previously been adjudicated in this State,

but this construction is clearly implied in *Carpenter*
v. *State*, 6 Baxt., 535, and *State* v. *Cassetty*, 3 Tenn.
Cas., 120.  We are referred to *Moore* v. *State*, 9 Yerg.,
353, as an adverse authority; but upon a careful exami-
nation of that case we do not see that it has any bearing
upon the question before us.

It is insisted by relator's counsel that after the con-
viction of the relator, under section 6717, it was neces-
sary, in order to remove him from office, that he should
be proceeded against by a bill in the nature of a *quo
warranto* under secs. 5165 to 5187 of Shannon's Code.
From what has been said, it is apparent that this is a
mistaken view.   Certainly there could be no need of
any additional proceedings after the very ground of
removal had been ascertained by proceedings under an
indictment.   Costs and time were avoided by a judg-
ment in that case removing the officers.  No good rea-
son can be conceived for an additional proceeding.  This
was evidently the view of the framers of the constitu-
tion, when section 5 of article 5 was drawn.

We have had submitted to us, by counsel for relator,
a very learned and interesting argument upon the ef-
fect of pardons in general under the common law of
England and of this country.  We have examined this
argument with care, but do not find it necessary to
write at length upon the phase of the case covered by
it, because, as already stated, the pardoning power in
this State does not apply to impeachment proceedings
at all.  The disabilities so imposed can be relieved only
by the legislature, as shown by section 4, art. 5, which

State, ex rel., v. Parks.

is construed with section 5. It is proper to remark, also, that in our opinion section 3655 and section 6066 do not apply to such proceedings.

And, even aside from the provisions of our constitution, it appears from the weight of authority that a pardon cannot restore to a former incumbent an office which he has forfeited. *Ex parte Garland,* 4 Wall., 380, 18 L. Ed., 366; *In re Spenser,* 5 Sawy., 195, Fed. Cas. No. 13234; *Cook* v. *Chosen Freeholders,* 26 N. J. Law, 326; *same controversy,* 27 N. J. Law, 637; *Baum* v. *Clause,* 5 Hill (N. Y.), 199; *Roberts* v. *State,* 30 App. Div., 106, 51 N. Y. Supp., 691; *same case,* 160 N. Y., 217, 54 N. E., 678; *In re Attorney,* 86 N. Y., 563; *Com.* v. *Fugate,* 2 Leigh (Va.), 724; *Edwards* v. *Com.,* 78 Va., 39, 49 Am. Rep., 377; *State* v. *Carson,* 27 Ark., 469; *Nelson* v. *Com.,* 128 Ky., 779, 109 S. W., 337, 16 L. R. A. (N. S.), 272. *Jones* v. *Board of Registrars,* 56 Miss., 766, 31 Am. Rep., 385, is cited as an authority to the contrary; but the opinion in that case, while stating very broadly the effect of a pardon, still recognizes the distinction above mentioned, to the effect that a pardon will not restore one to an office which he has forfeited. The proposition is fully supported in the common-law authorities referred to in *Ex parte Garland, viz.*: 4 Blackstone, Com., 402; 6 Bacon's Abr., tit. "Pardon;" Hawk., book 2, c. 37, secs. 34, 54. And see these authorities discussed in *Re Spenser,* supra.

It results that there is no error in the decree of the chancellor; and it must be affirmed, with costs.