STATE ex rel. v. GLENN YOAKUM.—306 S. W. (2d) 39.

Eastern Section. July 9, 1957.

Petition for Certiorari Denied by Supreme Court, October 4, 1957.

John P. Davis, Tazewell, for appellant.

G. Howard Nevils, Tazewell, for appellee.

McAMIS, P. J. The question in this case is whether a loan of money by a bank to a County School Board, of which the bank's president and principal stockholder is a member, falls within the ban of T. C. A. secs. 12-401 and 12-402, providing:

"12-401. Personal interest of officers prohibited. It shall not be lawful for any officer, committeeman, director, or person whose duty it is to vote for, let out, overlook, or in any manner to superintend, any work or any contract in which any municipal corporation, county, or the state, shall or may be interested, to be directly or indirectly interested in any such contract."

"12-402. Penalty for unlawful interest. Should any person, acting as such officer, committeeman, director, or other person referred to in sec. 12-401, be or become directly or indirectly interested in any such contract, he shall forfeit all pay and compensation therefor. Such officer shall be dismissed from such office he then occupies, and be ineligible for the same or a similar position for ten (10) years."

The bill was filed by the State, on relation of certain citizens and taxpayers of Claiborne County and the Attorney General for the Nineteenth Judicial Circuit, alleging that on May 9, 1953, while the defendant Yoakum was a member of the County School Board, the Claiborne County Bank in which he owned the controlling stock and of which he was President loaned the sum of $7,500 to the School Board; that the loan was repaid on July 23, 1953, with accrued interest amounting to $93.25 and that through the collection of interest the defendant as a stockholder in the Bank was directly benefited.

The Chancellor found that the loan was made in good faith as an accommodation to the School Board and not for profit but that in making the loan the defendant entered into a contractual relationship prohibited by the

Statute. A decree was rendered for $61.55 representing that portion of the interest collected to which defendant as a stockholder in the Bank would be entitled. In addition to the facts found by the Chancellor we find that the proceeds of the loan were placed on deposit in the Bank and checked out on a large number of checks the handling costs of which exceeded the interested collected.

Defendant was removed as a member of the School Board and declared ineligible to hold the same or a similar public office for a period of ten years. He has appealed insisting the contract was made by a corporation in which he owned only a portion of the stock and in an emergency to permit the Board to purchase used school books at the end of the school term but that, in any event, the statute does not apply to a bona fide loan of money. We limit our consideration to the question of whether a loan made in good faith for a legitimate purpose at the legal rate of interest violates the policy and purpose of the statute.

These statutes were enacted more than one hundred years ago. In their application our courts have consistently upheld their salutary spirit and purpose and we have no disposition to weaken their effect or recede from the strictness with which they have been applied. A loan of money, however, is unlike a contract for goods or services involved in all our reported decisions. Because they involve questions of value, contracts relating to goods and services provide opportunity for imposition upon the public. In the loan of money the law fixes the maximum rate of interest and no question of value is involved. Only a rate of interest below the maximum fixed by law can be the subject of negotiation. In the

loan here involved it is not insisted that such a short term loan could have been made elsewhere at a lower rate of interest and, as we have seen, the loan actually resulted in a loss to the Bank. To apply the statutes to such a situation, it seems to us, would be going beyond their meaning and purpose and result in great inconvenience in small communities where bank officers and stockholders frequently occupy positions of public trust and authority.

The question was directly presented to the Supreme Court of Pennsylvania in Long v. Lemoyne Borough, 222 Pa. 311, 71 A. 211, 212, 21 L. R. A., N. S., 474. A statute of Pennsylvania prevented a member of a municipal council from profiting by any contract ''for the sale or furnishing of any supplies or materials'' to his municipality. In rejecting the insistence that the statute applied to make illegal a loan made by a banking partnership in which council members were interested, the Court said:

> ''Money is not within its (the statute's) letter, and certainly not within its spirit. For the use of money a rate of interest is fixed by statute beyond which no lender can profit. * * *''

In Wakefield v. Mayor and Common Council of Borough of Caldwell, 152 A. 697, 9 N. J. Misc. 44, decided by the Supreme Court of New Jersey (1930), it was insisted loans fell within the ban of a statute, N. J. S. A. 2A:135-8, applying to the making of contracts or furnishing of labor and supplies by municipal councilmen. In refusing to so apply the statute or the common law the Court said:

"The practice of municipalities borrowing money from their local banking institutions is convenient, general, and practically universal, and it would create great hardship if the municipal body was to be driven to outside financial institutions merely because the owners or managers of such institutions, or both, happened to be connected at the same time with the municipal government."

In Davidson v. Sewer Improvement District, 1930, 182 Ark. 741, 32 S. W. (2d) 1062, the court refused to hold, in the absence of any allegation of fraud, that the sale of the refunding bonds of a sewer district to a bank of which one of the sewer commissioners was president was in violation of a statute prohibiting any member of a board from being interested, either directly or indirectly, in any contract made by the board. For text statements in harmony with these cases see 63 C. J. S. Municipal Corporations sec. 991, p. 558; 37 Am. Jur. 898, Municipal Corporations, Section 275. We have found no authority to the contrary.

With the greatest deference to the learned Chancellor, for the reasons indicated, the decree must be reversed and the suit dismissed. All costs will be taxed to Relators.

Hale and Howard, JJ., concur