P. E. Broyles

*v.*

State of Tennessee.

(*Knoxville,* September Term, 1960.)

Opinion filed December 9, 1960.

THOMAS E. MITCHELL, Johnson City, for plaintiffs in error.

THOMAS E. FOX, Assistant Attorney General, for State.

See also 207 Tenn. 566.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiff in error, P. E. Broyles, was convicted under Section 39-3201, T.C.A. of a misdemeanor in office while serving as Chief of the Johnson City Police Force. For this offense the jury imposed a fine of $500 and as a result of the conviction he likewise was removed from office and disqualified from holding office in the State of Tennessee for the remainder of his life under Section 39-3219, T.C.A. From this conviction he has seasonably appealed, filed assignments of error, brief and able arguments have been heard. We now have the matter for disposition.

The primary charge upon which this conviction was had was that this Chief of Police had been informed that a Captain in the Police Department under him had been found driving an automobile while under the influence of an intoxicant on the streets of Johnson City and that the Chief of Police under the statutes and rules regulating his duties had neglected to institute proceedings against this Captain, and likewise had failed to inform the City Manager of Johnson City of the acts of the Captain serving under this Chief of Police. This information was given to the Chief of Police in writing by another police officer shortly after the offense occurred. Two police officers saw this Police Captain driving his automobile on the streets of Johnson City while under the influence of an

intoxicant; they informed their immediate superior of this fact; and as a result the police officers took the Captain of the Police Department home. This information was immediately reported to the Chief of Police. There was also other evidence that some months prior to this occasion this same Police Captain had been seen to throw a paper cup, smelling strongly of intoxicants, from his car. This, according to the testimony, had likewise been reported to the Chief of Police, and no action was taken.

The plaintiff in error did not dispute the fact that the report was made to him, but said that he first learned of it by the grapevine some two days after the incident. The policeman testified that he informed the Police Chief about the matter, and one policeman said that he didn't know whether the Captain was drunk or sick and a written report was made at the Police Chief's direction. The policeman who insisted in taking the Captain home testified that he reported the incident by telephone to the Chief of Police the day following. This policeman testified that he did not make the statement to the Chief of Police that he didn't know whether the Police Captain was drunk or sick.

Other testimony was offered that over a year before the occurrence above spoken of a Lieutenant Watts of the Police Force had found this Police Captain driving on the streets in a drunken condition and had taken him to Police Headquarters and had informed the Chief of Police that the Police Captain was drunk. The excuse offered by the plaintiff in error to these various reports to him of the drunkenness of one of his force was that he did not think that he was drunk but that the Police Captain's condition was due to a diabetic condition.

██ ██ The jury and the trial judge heard all of this evidence as well as that of the Police Chief and concluded after hearing the evidence that the Chief was guilty of a misdemeanor under the statute, hereinafter to be quoted, of willfully failing to carry out his duties in that he did not prefer charges against the Police Captain and did not report the matter to the City Manager. The proof amply supports the finding of the jury. The jury having seen and heard the witnesses and there being ample material evidence to support such finding, we in the appellate court should not disturb the matter on the facts.

The statute (39-3201, T.C.A.) under which the indictment and conviction was had is:

"It shall be a misdemeanor for any public officer, or person holding any public trust or employment, willfully to neglect to perform his duty, where no special provision has been made for the punishment of such delinquency."

This statute was carried in the Code of 1858. Section 39-3219 provides that:

"If any judicial, ministerial, or executive officer is prosecuted for a misdemeanor in officer under the provisions of this Code, and duly convicted, he shall, in addition to the punishment prescribed for such offense, be removed from his office, and shall forever thereafter be disqualified from holding office under the laws and Constitution of this state."

This Section was likewise contained in the Code of 1858.

██ Basic argument for reversal is that the Police Chief was not a public officer under the meaning of these stat-

utes but was a mere employee of the City and subject to discipline under the civil service regulations contained in the City Charter (Chapter 189, Private Acts of 1939) and that under Section 16, Article 5 of these Private Acts the only way this officer could be removed is by ouster under our general ouster statutes as contained in Sections 8-2701 through 8-2726, T.C.A.

■ Considering the last of these questions first, this provision, that is Section 16 of Article 5, does not apply to a Police Chief but by specific language applies only to the Board of Commissioners of Education, Mayor, City Manager, City Judge and Juvenile Judge. Too, this general ouster act above referred to is remedial only and merely provides an additional and cumulative remedy. *State ex rel. v. Ward*, 163 Tenn. 265, 43 S.W.2d 217.

A note discussing the question, and citing authorities, on whether or not a policeman is a public officer will be found in 156 A.L.R., at page 1356. Among other cases there cited is the case of *Morris v. Parks*, 145 Or. 481, 28 P.2d 215, 216, from which the following statement is quoted:

"The duty of plaintiff as 'a law enforcement officer' under the statute, in enforcing the law and making arrests, involves the exercise of a portion of the sovereign power or functions of the state in which the public is concerned."

The Oregon court reached the conclusion that the police officer was an officer there.

Our Court in *Cornett v. City of Chattanooga*, 165 Tenn. 563, 56 S.W.2d 742, said that it is not the method by which a policeman became a member of the police force which

fixed his status, but that because of the nature and extent of his duties and responsibilities with which he was charged, he was recognized by the authorities as a civil officer of the municipal government. This Court likewise in *State ex rel. Harvey v. City of Knoxville,* 166 Tenn. 530, 64 S.W.2d 7, said:

> "A municipal policeman is an officer under the state, within the sense of that provision of the statute. *Porterfield v. State,* 92 Tenn. 289, 21 S.W. 519; *Cornett v. City of Chattanooga,* 165 Tenn. 563, 56 S.W.2d 742."

Thus it seems to us that under the Section of the Code on which this indictment is based that there is no doubt but that this Police Chief is an officer. He is a peace officer, and a large part of his duties are such that he must have authority to act, not as an agent for the State or City, but by virtue of the office. Thus, under the above authorities, it seems that the Police Chief here is the kind of an officer referred to in the Section above quoted on which this indictment is based.

The Police Department Manual of Rules and Regulations of Johnson City designate the Chief of Police, plaintiff in error here, as "the Chief Executive officer of the Department". Thus it is we feel for these reasons that the plaintiff in error is such an officer as is subject to indictment under this statute.

Then we come to the question of whether or not the act of this man in the failure to bring charges against a subordinate and to report these matters to his immediate superior, the City Manager, was a willful act or willful misconduct of his office. 67 C.J.S. Officers sec. 60 sub-section 3, p. 251, uses the following applicable language:

"The word 'willful' is used in the sense of a conscious and intentional failure or refusal to perform or keep inviolate any duty imposed on the officer by law; not every technical violation of a statute or of an official duty will justify removal under such a provision. 'Willful misconduct' does not, however, necessarily imply corruption or criminal intention, and an officer may be removed under such a statute, although the act alleged to constitute the willful misconduct charged falls short of the commission of a crime."

We think that clearly under these facts and the charge of the court that the jury was justified herein in concluding that the plaintiff in error willfully neglected to perform his duty herein and was thus subject to this indictment.

The Rules and Regulations of this Police Department in which this Chief of Police was the Chief Executive Officer clearly made it his duty to execute the mandates of this Police Manual which provided that he should report these matters to the City Manager and prefer charges for a violation of the law. Clearly when an officer of the law, whose duty it is to enforce the law, becomes blind to the actions of his inferiors in violating the law this becomes a very serious matter. One whose duty it is to enforce the law should be much more conscientious in seeing that he and those under him comply with the law in its every detail so that in trying to bring to bear the enforcement of the statutes as written that he should have respect in administering the law.

■ Because a municipal officer is subject to discipline, removal, etc., under the civil service regulations of the municipality, does not preclude him from being subject

to being indicted and convicted under the laws of the State. This was held in *State v. Critchett*, 69 Tenn. 271. There a municipal officer of the City of Chattanooga was indicted for violation for what is now carried in the Code as Section 39-3204 and is a part of the general chapter under which the present indictment was rendered. This Court there used this very pertinent language wherein it was said:

"Large interests are involved in the action of these corporation officers, in which a large number of the citizens of the State are or may be vitally involved and their rights affected. We think we will best subserve the public interests by holding such officers amenable to the restraints of the penal laws of the State for violations of duty, rather than leave them to the feebler arm of corporate action."

■ The statute under which this conviction was had, then the subsequent statute under which the removal from office and barring from holding office was had, that is, Section 39-3219, is mandatory after a conviction. It says, "he shall", in addition to the punishment for this, "be removed from his office, and shall forever thereafter be disqualified from holding office under the laws and Constitution of this state." As we see it, this is mandatory where there is a conviction. As above said, there is ample evidence herein to support this conviction.

■ ■ It is argued very forcibly that the penalty inflicted upon the plaintiff in error was so harsh that it evinced passion, prejudice and caprice on the part of the jury. We do not think so because it was primarily for the jury to fix the amount of the punishment and so long as the punishment imposed by them is within the limits al-

lowed by the law we have no right to disturb this verdict. *Ryall v. State,* 204 Tenn. 422, 321 S.W.2d 809; *Thompson v. State,* 192 Tenn. 298, 241 S.W.2d 404. We in the exercise of our appellate jurisdiction possess the power to revise the action of the trial judge where it lodged by law with the trial court, but where the action is that of the jury in assessing the punishment within the terms of the statute we do not have jurisdiction to revise that action. *Thompson v. State,* supra. By Code Section 39-105, T.C.A., one who is guilty as charged in this indictment might be fined up to $1,000 but not exceeding that amount. The fine here was $500, and the removal from office necessarily followed by virtue of the statute hereinabove referred to.

We have spent several days reading the record, briefs herein, investigating the authorities, those cited in the briefs and many others, and as a result of this work and investigation we have reached the conclusions above stated. It is for these reasons that the judgment below must be affirmed.