**STATE of Tennessee, Plaintiff-Appellant,**

v.

**William C. BLAZER, Defendant-Appellee,**

**Lonnie R. Butler, Intervenor-Appellant.**

Supreme Court of Tennessee.

July 27, 1981.

A. Schmutzer, Jr., Dist. Atty. Gen., Sevierville, Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, for plaintiff-appellant.

James W. Fletcher & G. P. Gaby, Greeneville, for intervenor-appellant.

Gordon Ball, Newport, A. Benjamin Strand, Dandridge, for defendant-appellee.

## OPINION

HARBISON, Chief Justice.

In this case appellee, the County Executive of Cocke County, Tennessee, was tried and convicted for a misdemeanor in office. Pursuant to the jury verdict of guilty, he was removed from office in accordance with T.C.A. § 39–3219. His conviction occurred on November 15, 1979.

Appellee appealed to the Court of Criminal Appeals which, on October 20, 1980, reversed the conviction and remanded the cause for a new trial. On February 2, 1981, this Court denied the State's application for permission to appeal.

After appellee had been removed from office, the county legislative body chose appellant Lonnie R. Butler to fill the vacancy to serve until the next general election in August 1980. He served until that time and in the August 1980 election he was chosen to serve the remainder of the term to which Mr. Blazer had been originally elected, that is, through August 31, 1982.

After his conviction had been reversed, appellee Blazer sought reinstatement from the trial court, and an order to that effect was entered on March 25, 1981. Appellant Butler, who had intervened in the proceedings, appealed that order, which has been stayed pending disposition of the appeal. The new trial ordered by the Court of Criminal Appeals for Mr. Blazer has not yet occurred.

The statute under which appellee Blazer was removed from office is as follows:

"If any judicial, ministerial or executive officer is prosecuted for a misdemeanor in office under the provisions of this Code, and duly convicted, he shall, in addition to the punishment prescribed for such offense, be removed from his office, and shall forever thereafter be disqualified from holding office under the laws and constitution of this state." T.C.A. § 39–3219.

It is the position of appellant that the removal from office of Mr. Blazer occurred immediately upon his conviction and followed thereon as a matter of law, as a form of impeachment prescribed in Article V, Section 5, of the state constitution. It is his position that regardless of the outcome of Blazer's appeal or of his new trial, Blazer is not entitled to be reinstated for the remainder of the term for which he was elected

and, inferentially at least, it is insisted that Mr. Blazer can never again hold public office in this state regardless of the reversal of his conviction on appeal.

Despite the extremely well-reasoned and carefully documented dissent in this case, the majority are not persuaded that the statute has such a drastic effect or that one convicted thereunder has no right to have the "impeachment" portion of his sentence reviewed by the appellate courts.

Admittedly the statutes in question are old, brief and cryptic. T.C.A. § 39–3219 is found near the end of a chapter entitled "Official Misconduct, Negligence and Misfeasance." This is a miscellaneous collection of statutes, most of them dating from the Code of 1858, providing that various acts of official misconduct shall be punished as misdemeanors. As quoted previously, the statute in question provides that if a public officer is prosecuted for a misdemeanor in office—"and duly convicted"—he shall be removed from his office and shall thereafter be disqualified from holding public office in the state. The annotators of the Code have placed a cross-reference to T.C.A. § 40–3701, which provides for the restoration of citizenship of persons "rendered infamous, or deprived of the rights of citizenship, by the judgment of a court . . . ."

The statutes are silent as to the procedures to be followed during the interim between the time of conviction and a subsequent appeal, or as to the effect of the reversal of a conviction.[1]

The key to the statutory provision, insofar as the present controversy is concerned, in our opinion is the word "duly". This adverb is defined in an unabridged dictionary as follows:

" . . . in a due manner, time or degree: as is right and fitting: PROPERLY, REGULARLY, SUFFICIENTLY . . . ." Webster's Third New International Dictionary 700 (1971).

1. In Broyles v. State, 207 Tenn. 571, 341 S.W.2d 724 (1960), removal after conviction under these statutes was said to be "mandatory." The Court added, however, "As above said, there is ample evidence herein to support this conviction." 207 Tenn. at 579, 341 S.W.2d 724 (emphasis added).

The word "convicted" is not subject to such precise definition. It is used in the law in any number of contexts and may refer to the verdict of a jury, the judgment or sentence pronounced by the trial court, or to a judgment that has become final or has been sustained on appeal. *See generally* 21 *Am.Jur.2d Criminal Law* §§ 617–619 (1965); *Black's Law Dictionary* 301 (5th ed. 1979).[2]

In the context of the forfeiture of public office, at least one court has said,

" 'Forfeitures are not favored, and courts incline against them. When a statute may be construed so as to give a penalty, and also so as to withhold the penalty, it will be given the latter construction.' . . . Strictly construing the language of the constitutional provision the 'conviction' must be a final one. Hence, it is evident that if the jury's verdict has been set aside or was under review and thus subject to be set aside either by motion for new trial, bill of exceptions or other appropriate procedure, there would be no conviction within the meaning of the constitutional provision." *Summerour v. Cartrett*, 220 Ga. 31, 136 S.E.2d 724, 725 (1964).

The term is not defined in the statutes here under consideration. Neither is it defined in the Class X statutes providing for enhanced punishment for an habitual drug offender, T.C.A. § 52–1432(d), nor in the general habitual criminal statutes, T.C.A. §§ 40–2801 *et seq.* To our knowledge, however, it has never been insisted that the term as used in those felony statutes has any other reference than to a judgment of conviction which has become final in the trial court or which has been affirmed on appeal. We are not aware of any case in which a criminal conviction which has been reversed on appeal has been considered to be admissible as evidence to enhance punishment under either of these statutes.

It is the general rule that when a conviction has been reversed by an appellate court, the accused stands as though he had never been tried. If a new trial is ordered, the accused is entitled to enter upon that trial with every presumption of innocence, and his guilt must be established beyond a reasonable doubt therein. *See generally* 24B C.J.S. *Criminal Law* § 1951 (1962).

Upon the reversal of Mr. Blazer's conviction by the Court of Criminal Appeals, and in the interim pending his retrial, he stands only as a person indicted for a misdemeanor in office—not as one "duly convicted."

Accordingly, in the opinion of the majority, the trial judge correctly reinstated Mr. Blazer to office and his judgment in that respect should be affirmed.

We recognize the validity of the reasoning in the dissenting opinion that stability and continuity in the administration of public affairs is to be desired. Nevertheless we are unable to conclude that the General Assembly intended to impose so harsh a penalty upon a public official accused of a misdemeanor as is indicated in that opinion without his ever having an opportunity for appellate review of his conviction. We recognize the persuasiveness of the decision in *State ex rel. Webb v. Parks*, 122 Tenn. 230, 122 S.W. 977 (1909), relied upon in the dissenting opinion, but that case did not involve the reversal of a conviction upon its merits. It simply interpreted the effect of the pardoning power of the governor upon one who had been "duly convicted" of a criminal offense. The Court held that the governor had no power to reinstate a public official who had been removed from office in connection with his criminal conviction under the statute in question. We do not believe that this is the same issue presented in the present case.

**2.** As to the many and varied civil disabilities which may flow from criminal proceedings, *see The Collateral Consequences of a Criminal Conviction*, 23 *Vand.L.Rev.* 929 (1970); with specific reference to the right to hold public office see pp. 987–1001 and 1175–1177 in the above cited article.

The general statutes in this state dealing with the removal of public officials from office, T.C.A. §§ 8–47–101 through 126, were enacted later than the statute now in question. They provide in some detail for the procedures to be followed during the pendency of an ouster proceeding, its trial and appeal. There are provisions for a pre-trial suspension hearing after the complaint is filed and for the temporary filling of a vacancy created by such suspension. T.C.A. §§ 8–47–116, 117. There are further provisions for a judgment of ouster upon conviction or restoration to office upon acquittal. T.C.A. §§ 8–47–120, 121. These statutes expressly provide for an appeal of the judgment of ouster to the Supreme Court and provide that a judgment of ouster "shall remain in full force until vacated, reversed, or modified by the Supreme Court." T.C.A. § 8–47–123.

Similarly, in the statutes dealing with quo warranto, and particularly those dealing with the adjudication of disputed claims to public office, T.C.A. §§ 29–35–107, 108, there are provisions for an appeal "for the correction of errors, as in other chancery cases." T.C.A. § 29–35–121.

■ It accordingly appears that any public official who has been removed from office under the general ouster statutes or whose claim to public office has been denied in quo warranto proceedings is not finally and permanently removed by the judgment of the trial court. The officer may be removed temporarily pending an appeal, as was done in the present case,[3] but certainly if his appeal is successful and the judgment of the trial court is reversed, his removal from office does not remain permanent, and he has not forfeited the remainder of his term.

There are still other statutes providing for the removal from public office and disqualification thereafter in the provisions regarding public contracts and conflicts of interest by public officials with respect thereto. T.C.A. § 12–4–102 provides that any public official found guilty of such conflict of interest shall forfeit all pay and compensation for his office, shall be removed and shall be ineligible for the same or a similar position for a period of ten years. These statutes, like the criminal statutes now under consideration, make no provision for an appeal. In the case of *State ex rel. v. Yoakum,* 43 Tenn.App. 123, 306 S.W.2d 39 (1957), a member of a county school board was found guilty of violating T.C.A. § 12–4–101. He was ordered to be removed from office and declared ineligible to hold office thereafter for a period of ten years. The Court of Appeals, however, reversed the conviction on the facts and ordered the suit dismissed. There is no indication in the opinion that, following the reversal and dismissal of the suit, the public official was still disqualified from holding his office or from being re-elected to other public offices.

Persons convicted of felonies are not treated in the manner urged by the appellant in this case. They are disqualified from holding office upon conviction. T.C.A. § 40–2714. If such a conviction is reversed upon appeal, however, in our opinion, such reversals carry with them automatically a restoration to citizenship. We do not believe that a person whose conviction has been reversed on appeal would have to resort to a separate petition for restoration under T.C.A. §§ 40–3701 *et seq.*

For these reasons, we are of the opinion that the trial judge acted in accordance with the intent of the law, and with logic, in holding that Mr. Blazer is no longer "duly convicted" and that he is therefore entitled to be restored to his office pending the second trial. Surely if Mr. Blazer is acquitted upon the second trial, he would be entitled to be restored to his office. Under no interpretation of the statutes, in our opinion, could he then be said to have been "duly convicted" of the charges against him.

---

**3.** Appellee does not challenge the propriety of the selection of Mr. Butler to serve in his stead while he was actually under judgment of conviction and during the pendency of his appeal therefrom.

We recognize that the General Assembly, in its discretion, may treat public officers and their right to their respective offices differently from other citizens. Nevertheless, while a public official has no vested right in his office, "it is well settled that an office is a species of property in which he has property rights." *State v. Kerby*, 136 Tenn. 386, 389, 189 S.W. 859 (1916); *see also State ex rel. Shelby County v. Stewart*, 147 Tenn. 375, 380, 247 S.W. 984 (1919). We are of the opinion that the General Assembly did not intend to deprive an officeholder of such property right under the old criminal statute involved here without affording appropriate appellate review similar to that permitted under all of the other statutes dealing with removal of public officials.

In our opinion, it would be extreme indeed to permit a public official to be removed from office permanently upon a jury verdict, regardless of the manner in which that verdict was reached and irrespective of the instructions given by the trial judge or his rulings upon evidence, and never to allow that official an opportunity for review of the proceedings in an appellate court. Regardless of whether the General Assembly might or might not have constitutional authority to impose such a forfeiture, we do not believe that it has done so in this statute. As they pertain to the facts presented here, the words "duly convicted" mean a conviction which has become final without appeal or one which has been affirmed after appellate review.

Accordingly the judgment of the trial court is affirmed and the stay order heretofore entered is dissolved. This cause is remanded to the trial court for entry of any further orders which may be necessary. Costs incident to the appeal are taxed to appellant Butler. All other costs will be assessed by the trial court.

COOPER and BROCK, JJ., concur.

DROWOTA, J., dissents.

FONES, J., concurs in dissent and files separate opinion.

DROWOTA, Justice, dissenting.

For the reasons discussed below, we feel compelled respectfully to dissent from the holding of the majority in this case. We do not find that either Tennessee law or the weight of authority in other jurisdictions supports Mr. Blazer's contentions.

William C. Blazer was the elected County Executive of Cocke County, Tennessee, serving a four-year term which was to expire September 1, 1982. On November 15, 1979, he was convicted of official oppression, a misdemeanor, under T.C.A. § 39–3203. The trial court immediately declared him removed from office under Art. V, § 5 of the Tennessee Constitution and under T.C.A. § 39–3219.

The trial court also ordered that the County Court Clerk and County Chairman be officially notified of the judgment and of the vacancy in the office of County Executive so that they might take such action as might be required by law. Shortly thereafter, on December 10, 1979, the county legislative body chose Lonnie R. Butler to serve as County Executive until the next General Election. The next General Election took place August 7, 1980, at which time Mr. Butler was elected County Executive to serve until September 1, 1982, that is, to fulfill the remainder of Mr. Blazer's term of office.

Among the post-trial matters raised by Mr. Blazer was a request to the Court of Criminal Appeals for a stay of his removal from office pending appeal, which request was denied. Mr. Blazer appealed his conviction, and on October 20, 1980, the Court of Criminal Appeals rendered an opinion reversing the conviction and remanding for a new trial. On February 2, 1981, this Court denied the State's application for permission to appeal the reversal.

Mr. Blazer then asserted that he should be reinstated to the position from which he had been removed. Naturally, this contention was opposed by Mr. Butler. The trial court, on March 25, ordered Mr. Blazer reinstated, but such order was stayed by the Court of Criminal Appeals pending appeal.

On May 11, we heard Mr. Blazer's motion to stay the order of the Court of Criminal Appeals and also his motion to expedite the hearing upon its merits. On May 22, we denied Mr. Blazer's motion to stay the order of the Court of Criminal Appeals; however, we granted his motion to expedite in this cause in order to secure the just, speedy, and inexpensive determination of the matter. In so doing we specifically noted that we *did not* approve of the procedure followed in the trial court for determining entitlement to hold office. On June 18, we heard argument of the reinstatement aspect of the case.

Obviously, reinstatement of Mr. Blazer would have the effect of removing Mr. Butler from an office to which he has been elected. Mr. Blazer has conceded that it would not have been proper for him to have remained in office between his conviction in November, 1979, and the reversal thereof in October, 1980. Neither Mr. Blazer nor anyone else in any way protested or disputed the choice of Mr. Butler by the county legislative body, and his election by the voters, to serve as County Executive. Yet he argues that the office was not "vacant" and could not be legally "vacant" unless the conviction of the original incumbent has been upheld on appeal. In effect, he argues that we should concoct and engraft upon our Constitution and statute merely a period of suspension so that, on reversal of his conviction, the original incumbent is entitled to reinstatement—even though the reversal be on procedural grounds and not on the merits, and thus is not a final disposition of the case.

As noted above, the issue before us depends directly upon the interpretation of Article V, § 5 of our Constitution, and of T.C.A. § 39–3219. However, the constitutional section can only be read in light of Article V, § 4, the immediately preceding section. This section provides:

*Who may be impeached.*—[Certain listed State officials] shall be liable to impeachment, whenever they may, in the opinion of the House of Representatives, commit any crime in their official capacity which may require disqualification; but judgment shall only extend to removal from office, and disqualification to fill any office thereafter. The party shall, nevertheless, be liable to indictment, trial, judgment and punishment according to law. The Legislature now has, and shall continue to have, power to relieve from the penalties imposed, any person disqualified from holding office by the judgment of a Court of Impeachment.

Article V, § 5 provides:

*Officers liable to indictment and removal from office.* Justices of the Peace, and other civil officers, not hereinbefore mentioned, for crimes or misdemeanors in office, shall be liable to indictment in such courts as the Legislature may direct; and upon conviction, shall be removed from office by said court, as if found guilty on impeachment; and shall be subject to such other punishment as may be prescribed by law.

Finally, T.C.A. § 39–3219 provides:

*Removal from office and disqualification as additional penalty for misdemeanor in office.*—If any judicial, ministerial, or executive officer is prosecuted for a misdemeanor in office under the provisions of this Code, and duly convicted, he shall, in addition to the punishment prescribed for such offense, be removed from his office, and shall forever thereafter be disqualified from holding office under the laws and constitution of this state.

The foregoing constitutional and statutory language was first discussed by this Court in *State ex rel. Webb v. Parks,* 122 Tenn. 230, 122 S.W. 977 (1909). Although the majority feels that such case is to be distinguished, we find it to be directly in point here. The majority notes that we rely upon *Webb,* then says, "but that case did not involve the reversal of a conviction upon its merits." We would respond that neither has Blazer's conviction been reversed upon its merits, but rather only upon defects calling for a new trial.

Webb was a justice of the peace, and was indicted and convicted of the crime of official oppression under the same statute as

was Mr. Blazer. Part of the judgment and decree of the trial court was that Webb be removed from his office. The county election commissioners called a special election to fill the office; however, before such election could be held, the Governor pardoned Webb, directing that the judgment be rendered null and void and of no effect. Webb asserted to the election commissioners that, due to the pardon, his office *had not been legally vacated*, and that they should not hold the election. Nevertheless, they did so, and Parks was elected to the office. Webb filed a bill to remove Parks; Parks demurred, and the Chancellor upheld the demurrer. Webb appealed.

Although the issue was whether the Governor's pardon of the crime relieved Webb of his disqualification to hold office, and thus did not deal with a reversal of the conviction, the contentions of the parties were similar and the reasoning is persuasive. After quoting Art. V, §§ 4 and 5, the Court held that the judgment of the trial court, which ousted Webb from office, was an impeachment proceeding, insofar as it dealt with that subject. Section 5 sets out the mode of impeachment of justices of the peace. The Court went on,

> It was clearly contemplated in section 5, art. 5, of the constitution, that in the same proceeding in which the guilt of the accused should be ascertained he should be removed from office and disqualified from ever thereafter holding office. While it was contemplated that the officers mentioned in section 4, art. 5, should be impeached when necessary before the legislature, and also indicted and punished in the criminal court, as to justices of the peace and other inferior officers, the two proceedings were united into one by section 5. This is the clear meaning of the provisions of the constitution.

122 Tenn. at 236, 122 S.W. 977. Also, it was not necessary to bring a bill in the nature of a quo warranto in order to remove Webb from office after his conviction. "Certainly there could be no need of any additional proceedings after the very ground of removal had been ascertained by *proceedings under an indictment.*" *Id.* at 237, 122 S.W.

977 (emphasis added). That is, removal is automatic and immediate upon conviction of the crime, operating prospectively. There is no period of suspension during which removal is not final, while the parties "wait and see what happens."

Finally, it was held that the disabilities imposed by impeachment—disqualification from filling any office after the removal—can be relieved only by the Legislature, as provided by Art. V, § 4, which is construed with § 5. *Id.* at 237–238, 122 S.W. 977.

The later case of *Coffey v. State*, 207 Tenn. 260, 339 S.W.2d 1 (1960), also applied and construed T.C.A. § 39–3219. Therein, a policeman was convicted of official oppression. In addition to the fine, the trial court directed the policeman's removal from office and ordered that he be forever disqualified from holding office under the laws of the state. Coffey's protest on appeal related to the fact that his term of office during which the crime had been committed had expired, so that he could not be so disqualified.

This Court held that Coffey's contention was incorrect. "If that *trial* [the trial of the criminal offense], *when had, results in a conviction,*" the offender must be forever disqualified from holding office. *Id.* at 270, 339 S.W.2d at 5 (emphasis added).

In *Broyles v. State*, 207 Tenn. 571, 341 S.W.2d 724 (1960), relied upon by the majority, a police chief was convicted of a misdemeanor in office and removed and disqualified from again holding office under T.C.A. § 39–3219. The issues in the case concerned whether Broyles was subject to the misdemeanor statute in question. The Court determined that he was, and further affirmed the conviction on the merits, based upon the weight of the evidence. Thus,

> ... the subsequent statute under which the removal from office and barring from holding office was had, that is, Section 39–3219, is mandatory after a conviction. It says, "he shall", in addition to the punishment for this, "be removed from his office, and shall forever thereafter be disqualified from holding office under the

laws and Constitution of this state." As we see it, this is mandatory when there is a conviction. As above said, there is ample evidence herein to support this conviction.

341 S.W.2d at 728. We feel that this case supports, rather than detracts from, our view. The language means what it says, and underscores the prospective operation of § 39–3219.

In all of the above cases it was clear that removal from office occurs upon conviction at the trial of the underlying crime—not at some later date. It takes place without the need of any further action. As the *Webb*, case, *supra*, explains the removal aspect is separate from the criminal aspect of the trial. Article V, § 5 and T.C.A. § 32–3219 are parallel in effect to Art. V, § 4. The only difference is that in the former, removal from office and criminal proceedings take place in the same forum; in the latter, removal from office takes place prior to and in a different forum from the criminal proceedings. Under Art. V, § 4, the removal from office and disqualification from holding office in the future do not depend for their effectiveness upon conviction of the crime. Therefore, under Art. V, § 5 and T.C.A. § 32–3219, removal from office upon conviction would not be dependent upon the outcome of an appeal from such conviction.

Not only were the cases discussed above correct in holding that removal operates from the time of conviction in the trial court, but the language of the Constitution so mandates. Section 5 expressly provides that the officials covered thereunder, "for crimes or misdemeanors in office, shall be liable to indictment *in such courts as the Legislature may direct*; and upon conviction, shall be removed from office *by said court, as if found guilty on impeachment*; ..." (Emphasis added.) The court in which such official would be liable to indictment would, of course, be the trial court in the locality having criminal jurisdiction. When conviction takes place, the official shall be removed from office *by said court.* That can only mean the trial court. There is not the slightest implication in the Constitution, nor is there in the statute, that removal as a consequence of conviction must await appellate review, if brought, and possibly subsequent trial proceedings. Removal upon *conviction* is mandatory, and *conviction* takes place only in the trial court. Appellate courts do not convict criminal defendants; their function is to review, where properly called upon to do so, the trial proceedings which resulted in conviction.

Other Tennessee cases relied upon by Mr. Blazer are inapposite. These cases, *Southall v. Billings,* 213 Tenn. 280, 375 S.W.2d 844 (1963), and *Waters v. State ex rel. Schmutzer,* 583 S.W.2d 756 (Tenn.1979), dealt with different statutes and different situations. We have not held that "convicted" as used in T.C.A. § 32–3219 does not take effect, if an appeal is brought, until the conviction is ultimately affirmed. Rather, this Court in the *Webb, Coffey* and *Broyles* cases, has specifically recognized the contrary: that conviction at the trial level operates to remove and oust the official.

We cannot agree with the majority's interpretation of our Constitution and statute which would have Mr. Blazer removed from office when convicted at the trial level, restored to office if his conviction is reversed and remanded, and possibly again removed if he is again convicted after a new trial, ad infinitum. There is no provision, as there is in some statutes in Tennessee (as is mentioned by the majority) and elsewhere, for a period of suspension. There is only provision for removal. Mr. Blazer was either removed once and for all, when he was convicted in November, 1979 —or he was not. We believe that he was so removed. For Mr. Blazer to agree that he had no right to the office after conviction, then to argue that he became entitled to the office again after a reversal not on the merits, but only for a new trial, reads wording into the Constitution and statute which simply is not there.

Furthermore, we must point out that Article VII, § 2 of the Constitution would prevent the reinstatement of Mr. Blazer,

because Mr. Butler is the de jure County Executive of Cocke County until September 1, 1982, when the current term of office expires. Article VII, § 1 provides for election of county officials, including the County Executive. Section 2 provides:

> *Vacancies.*—Vacancies in county offices shall be filled by the county legislative body, and any person so appointed shall serve until a successor is elected at the next election occurring after the vacancy and is qualified.

Mr. Butler was chosen County Executive according to this procedure. Even Mr. Blazer concedes that Mr. Butler properly held the office and that he, Mr. Blazer, had no standing to challenge this. The majority does not deal with the fact that to reinstate Mr. Blazer would oust from office Mr. Butler, lawfully elected to the office for a specific term. Under the foregoing section, it is clear that Mr. Butler is not a mere substitute or interim officeholder. The procedure set out above is mandatory and does not allow for Mr. Blazer's elected successor to be removed from office by fiat.

The majority assumes, based upon what we have stated thus far, that we would foreclose all relief to a person in the event that he should be retried and acquitted, or in the event that his conviction should be reversed on the merits, i. e., for insufficient evidence. In fact, much of the basis for the majority's holding seems to be its desire to prevent such a harsh result. Consequently, we wish to make it eminently clear that such is not our holding in this case. Simply because we would hold that one is not entitled to reinstatement upon the reversal of a conviction and remand for new trial, it does not necessarily follow that one should remain permanently disqualified in the event that he is ultimately "cleared" on the merits.

We have shown that the Constitution and Code operate prospectively, not on the basis of hindsight. Thus, it is true that we interpret them to mean that an official is removed and forever disqualified upon being convicted at the trial level. The former official, the cases have held, becomes as much a stranger to the particular office in question as if he had never occupied such office. The disqualification aspect remains permanent *unless* the individual is later cleared of the crime on the merits; that is, unless his conviction is reversed on appeal for insufficiency of evidence as a matter of law, or unless he is retried and acquitted. The disqualification aspect should not be removed if the reversal is merely an interim one, not on the merits, merely remanding the case for a new trial.

This interpretation is derived from the language of Article V, § 4 of the Constitution, in light of which § 5 must be read. Section 4 discusses impeachment and removal by the Legislature. It then states that the former official shall separately be subject to criminal proceedings and punishment. Finally, it provides that the Legislature has "power to relieve from the penalties imposed, any person disqualified from holding office by the judgment of a Court of Impeachment." What better candidate would there be for relief from the penalty of disqualification than a person who had been cleared of the criminal charges against him? But we note that the Legislature is *not* stated to have the power to relieve from the penalty of removal from office. Once the office is lost, it is lost for the remainder of the term. What *can* be restored is the right to seek that, or any other, office in the future, just as any other citizen could do.

This interpretation strikes a balance between the public good, on the one hand, and the private interest of the former official, on the other. The public interest requires that its positions of trust be held by persons whose good names are not cast in doubt, but are beyond question. The public interest also requires stability with respect to who its officials shall be and how they obtain their offices. "Public interest requires that all possible certainty exist in the election of officers in the beginning and expiration of their terms . . . ." *Caldwell v. Lyon,* 168 Tenn. 607, 615, 80 S.W.2d 80 (1935). It is grossly unfair to the public in this case to allow an office to seesaw be-

tween one person or another, with the resultant burdens and expenses of repeatedly choosing successors, depending on the current status of an underlying conviction.

We do not feel that the former official has any property right to restoration of the office which outweighs, in the Constitutional sense, the interests of the public. The cases cited for this proposition by the majority involved rights to certain fees collected by the officials in question throughout the state. Statutes prohibited the officials in certain localities from retaining such fees, which amounted to unconstitutional discrimination. Further, the rights in question were those of one presently holding the office, not a property right to hold the office itself.

The former official's interests are adequately protected by the fact that he may have his right to seek office restored if he is ultimately cleared. Even though one's civil rights may be restored upon an interim reversal of a conviction, it does not necessarily follow that the right to hold office is then restored. The reason for this distinction is that removal is not punishment for the crime. It is simply the expression of public policy, reflecting the beliefs of the framers of the Constitution, as to who is and is not suitable to hold offices of public trust. As we have discussed earlier, removal is the result of the impeachment aspect of the trial, conducted, under Art. V, § 5 of the Constitution, simultaneously with the criminal aspect. For high state officials, impeachment is carried out under Art. V, § 4, prior to and whether or not a criminal trial takes place. Greater safeguards are built into impeachment under § 5 as to lower state officials, because removal from office awaits the conviction.

Numerous cases have recognized and dealt with the fact that removal seems harsh, in *retrospect,* when the former official's innocence is later established. One example is the case of *Becker v. Green County,* 176 Wis. 120, 184 N.W. 715, 186 N.W. 584 (1921), wherein a county judge was convicted of espionage and immediately removed from office. The conviction was later reversed on the merits, the appellate court finding as a matter of law that there had been insufficient evidence. The former judge then sought reimbursement of his salary from the date of his removal to the end of his term of office (since the term expired prior to the reversal). The court quoted constitutional and statutory language providing that no person convicted of certain crimes would be eligible to hold office, and that conviction rendered the office vacant, etc. The court found, "While the provision already referred to gave rise to a vacancy in the office of county judge of Green county upon the conviction of plaintiff, no provision is made for restoration to office, or payment of salary thereof, in case of a reversal of the judgment of conviction." 184 N.W. at 717. Despite great sympathy for the plight of the judge, nowhere was there language which would justify granting him relief:

> No mistake-proof system of administering justice has yet been devised, nor is it likely to be, as long as the element of human judgment enters into the scheme. The innocent will be punished and the guilty will escape. We contemplate this fact with regret, but nevertheless the fact exists. Although [plaintiff] has suffered most grievously by reason of the error committed, he has no doubt faced his misfortune as philosophically as one may be expected to do who smarts under the sense of grievous wrong.

*Id.* at 716. A law granting relief as sought by plaintiff had been passed after the conviction. In holding that this was of no help to plaintiff, the court stated:

> Furthermore, it was not within the power of the Legislature to make the restorative features of the law applicable to plaintiff. It must be borne in mind that he was effectively divested of any right or title to the office. His status with reference to the office was fixed at the time of his conviction. Thenceforth he was a stranger thereto, as much as any other elector of Green county. A successor was lawfully in possession of the office. The Legislature could no more re-

store the plaintiff to the office than it could induct therein one who had never held the same. Such offices must be filled either by election or appointment.

*Id.* at 718.

In *State v. Twitchell*, 59 Wash.2d 419, 367 P.2d 985 (1962), the former official argued that removal from office after conviction at the trial level violated his state constitutional right of appeal of his criminal case. The court's response to this contention will be set out at length, because it responds equally well to the majority's holding in this case:

Article I, § 22, unquestionably establishes and is a constitutional guarantee of the right of appeal to defendants *in criminal cases*. But it is *no more* than this. Furthermore, it simply would be stretching the cloth to fit the pattern, and much too much, to engraft upon this provision of the constitution a special constitutional protection and right, applicable only to a judicially synthesized classification of criminal defendants; namely, those few criminal offenders who by accident or fortuitous circumstance occupy public office.... Our statutory provisions relating to vacation of office, or removal of public officers cannot be said to limit, restrict or deny something that does not exist, namely, special employment benefits or protection for public officeholders while an appeal from a criminal conviction is pending.

Every other criminal defendant convicted at the trial court level is forced to bear hardships, even if his conviction is overturned on appeal. [Citations.] Adverse publicity, social stigma, and personal losses are commonplace—in fact, almost inevitable. Convicted criminal offenders may even lose their jobs—and probably will—if their employer chooses or feels forced by circumstances to discharge them. The results can be and often are harsh and unfortunate, but this does not amount to, or at least has not yet been judicially recognized as, an infringement upon the right of appeal....

Vacancy in, or removal from, office as a result of a conviction of a public officer is not a punishment. [Citation.] Removal from office is simply a consequence of a reasonable and sound public policy, and a condition imposed upon a public official in furtherance of the public interest in good government. [Citation.] "Officers are elected not for the benefit of the individuals, but for the benefit of the community * * *". [Citation.] Public officials can and should be removed, irrespective of detriment to the individuals involved if the interests of the community so require.... Basically, the statute is a legislative statement of qualifications for holding public office. One such qualification is that a public official convicted of "any offense involving a violation of his official oath" shall not hold a position of public trust.

367 P.2d at 991–92.

We would also call attention to *State v. McGuane*, 13 Ill.2d 520, 150 N.E.2d 168, *cert. denied*, 358 U.S. 828, 79 S.Ct. 46, 3 L.Ed.2d 67 (1958). At issue was the meaning of "conviction" as used in the Illinois Constitution and statutes. The opinion included quotations from debate at the convention at which the Constitution of 1870 was drafted. The drafters voted to include therein a provision that "No person who has been, or hereafter shall be, convicted" of certain crimes would be eligible to a seat in the Legislature. One delegate wanted to add the language, "unless after such conviction his innocence shall be established." He felt that in some instances, ineligibility to sit in the Legislature upon conviction could work an injustice. His fellow delegates voted to leave such language out of the provision.

We feel that it is unnecessary to add a further analysis of authorities from other jurisdictions. The great weight of such authorities is consonant with the foregoing interpretation and holding. The majority of cases hold that in provisions similar to those in question here, the word "conviction" means conviction or judgment in the trial court; that removal from office is a consequence of, but separate from, the

criminal conviction; that removal is effective immediately and is not affected by an appeal of the conviction. The majority of courts which have considered the question hold that reversal of a conviction does not entitle the party to reinstatement to office. The cases recognize that the effects of this rule can operate harshly at times; but it is held that, on balance, the public's interest in keeping offices of trust above reproach must outweigh the private interest of the former officeholder.

The leading cases on the subject are *Becker v. Green County*, 176 Wis. 120, 184 N.W. 715 (1921), *supra*, and *State ex rel. Guthrie v. Chapman*, 187 Wash. 327, 60 P.2d 245 (1936). *See also State v. Sullivan*, 66 Ariz. 348, 188 P.2d 592 (1948); *May v. Edwards*, 255 Ark. 1041, 505 S.W.2d 13 (1974); *Skaggs v. Horrall*, 83 Cal.App.2d 424, 188 P.2d 774 (1948); *People v. McGuane*, 13 Ill.2d 520, 150 N.E.2d 168, *cert. denied*, 358 U.S. 828, 79 S.Ct. 46, 3 L.Ed.2d 67 (1958), *supra; Bucklew v. State*, 192 So.2d 275 (Miss.1966); *State v. Chavez*, 79 N.M. 578, 446 P.2d 445 (1968); *State v. Twitchell*, 59 Wash.2d 419, 367 P.2d 985 (1962), *supra;* Annot., 71 A.L.R.2d 593 (1960); Annot., 106 A.L.R. 644 (1937).

To recapitulate our position, it is that upon a final judgment of conviction in a trial court, the plain meaning of Art. V, §§ 4 and 5 of the Constitution and T.C.A. § 39–3219 is that removal from office "by said court" and disqualification from holding office in the future are immediate, automatic, and prospective, as a matter of law. This consequence flows from the fact that the criminal proceeding is simultaneously a removal proceeding. The removal is therefore not a criminal punishment. An interim reversal of the conviction for a new trial has no effect upon either the removal or the disqualification. A reversal of the conviction on the merits, an acquittal after new trial, or other final disposition of the criminal case in the defendant's favor, could not affect his removal from office for the remaining term thereof, but would affect the permanency of the disqualification. That is, the official would have the same opportunity to seek restoration of his right

to hold public office in the future, as he would have if he were a person seeking such relief before the Legislature under Art. V, § 4.

In accordance with the foregoing, we would vacate the order reinstating Mr. Blazer as County Executive of Cocke County, and hold that Mr. Butler shall serve as such until the expiration of the present term of office.

I am authorized to state that FONES, J., joins with me in this dissent.

FONES, Justice, dissenting.

We are called upon to adjudicate a contest between two persons claiming the right to hold the same public office. That issue was first introduced by a motion on behalf of Blazer to be reinstated to the office of County Executive, filed in the pending criminal action styled State of Tennessee versus William C. Blazer, wherein Blazer was charged with official oppression, was tried and convicted and that conviction reversed and remanded for a new trial. Mr. Butler leaped into the fray by an intervening petition wherein he questioned both the jurisdiction of the Court and the merits of Blazer's effort to remove Butler from office and to be reinstated as County Executive.

It is my opinion that the time honored practice in this State requires that the issue involved here be instituted and prosecuted as a quo warranto action as prescribed in T.C.A. §§ 29–35–101 et seq., formerly T.C.A. §§ 23–2801 et seq. *See e. g., State ex rel. Higgins v. Dunn*, 496 S.W.2d 480 (Tenn.1973) and *State ex rel. Bryant v. Maxwell*, 189 Tenn. 187, 224 S.W.2d 833 (1949).

I would therefore dismiss this proceeding.

Since the majority insists upon adjudicating the issue, I concur in the dissenting opinion authored by DROWOTA, J.